1  MICHAEL C. HALLERUD, State Bar No. 68971
   hallerud@nixonpeabody.com
2  BONNIE GLATZER, State Bar No. 147804
   bglatzer@nixonpeabody.com
3  NIXON PEABODY LLP
   One Embarcadero Center, 18th Floor
4  San Francisco, California 94111-3600
   Telephone:  (415) 984-8200
5  Facsimile:  (415) 984-8300

6  Attorneys for Defendant
   IGATE TECHNOLOGIES, INC.
7

8              IN THE UNITED STATES DISTRICT COURT

9            FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11 KARETHA DODD,                        Case No.

12                    Plaintiff,
                                        **NOTICE OF REMOVAL UNDER**
13     v.                               **28 U.S.C. §§ 1332(a)(3) and 1441(b)**

14 IGATE TECHNOLOGIES, INC., a Pennsylvania
   corporation; MUKUND SRINATH, an individual;
15 and DOES 1 through 200,

16                    Defendants.

17

18 TO:   CLERK OF COURT, PLAINTIFF KARETHA DODD, and DEFENDANT MUKUND
         SRINATH
19

20          PLEASE TAKE NOTICE that, pursuant to 28 U.S.C. § 1441(b), Defendant IGATE

21 Technologies, Inc. ("IGATE") hereby removes the above-styled action from the Superior Court of the

22 State of California in and for Alameda County to the United States District Court for the Northern

23 District of California.  This Court has original jurisdiction of this action pursuant to 28 U.S.C. §

24 1332(a)(3).

25          Pursuant to 28 U.S.C. § 1446(a), IGATE hereby states in support of its Notice of Removal:

26          1.     On September 29, 2014, Plaintiff Karetha Dodd ("Dodd") commenced this civil action

27 against IGATE by filing a Complaint for Damages ("Complaint") in the Superior Court of the State

28

of California in and for Alameda County entitled, *Karetha Dodd v. IGATE Technologies, Inc., et al.*, Case No. RG 14742587 ("State Court Action").  On January 15, 2015, Dodd filed her First Amended Complaint for Damages ("FAC").  True and correct copies of the Complaint, FAC, and all other papers filed in the State Court Action are attached hereto as Exhibit A.

3.      The Complaint in the State Court Action was never served on IGATE.  Service of the FAC was pursuant to an agreement between Dodd's and IGATE's counsel of record to waive personal service upon IGATE and to deem mailing of the FAC by First Class United States Mail to IGATE's counsel to be service upon IGATE as of January 26, 2015.  This Notice is filed within 30 days of service and receipt of the FAC, as required by 28 U.S.C. § 1446(b) for removal.

4.      IGATE has not filed or served any papers in the State Court Action.  Defendant Mukund Srinath ("Srinath") has not been served with process or pleadings, has not appeared, and has not filed or served any papers or pleadings in the State Court Action.

5.      Dodd is, and was at the time the State Court Action was commenced, a citizen and resident of the State of California.  [Complaint ¶ 1; FAC ¶¶ 4, 31-32; Declaration of Suresh Nair ¶ 6 (attached hereto as Exhibit B) ("Nair Decl."); Declaration of Michael C. Hallerud ¶¶ 2-3 & Exs. 1-2 (attached hereto as Exhibit C) ("Hallerud Decl.")]

6.      IGATE is, and was at the time the State Court Action was commenced, a corporation organized under the laws of the State of Pennsylvania.  [Complaint, caption; FAC, caption; Nair Decl. ¶ 2]  IGATE's corporate headquarters and principal place of business are in the Township of Bridgewater in the State of New Jersey.  IGATE's principal executive officers maintain their offices in Bridgewater, New Jersey and direct, control, and coordinate IGATE's business from that location.  Those executive officers stationed in Bridgewater, New Jersey include the president and chief executive officer; the senior vice presidents responsible for legal affairs (Americas, Europe, Australia, and Asia), manufacturing (North America), and specific North American customer and industry sectors (General Electric Company, insurance, healthcare, and life sciences); the vice president for human resources (Americas); and the controller (North America).  [Nair Decl. ¶¶ 3-4]

6.1      Because Bridgewater, New Jersey is IGATE's principal place of business pursuant to the "nerve center" test established by the United States Supreme Court in *Hertz Corp. v.*

1 *Friend*, 559 U.S. 77, 130 S. Ct. 1181 (2010), IGATE therefore is, and was at the time the State Court
2 Action was commenced, a citizen of the States of Pennsylvania and New Jersey.

3       6.2    IGATE is not, and was not at the time the State Court Action was commenced,
4 a citizen of the State of California.

5       7.    Srinath is, and was at the time the State Court Action was commenced, a citizen and
6 resident of the Republic of India. [Complaint ¶ 3; FAC ¶ 3]

7       8.    Dodd's Complaint for Damages prays for general and special damages ("lost wages,
8 emotional distress, costs of mitigation, and other damages"), punitive and exemplary damages, and
9 attorneys' fees as authorized by the California Fair Employment and Housing Act, Gov. Code §
10 12965. Dodd values her lost compensation, including salary, bonuses, benefits, and stock options, at
11 approximately $300,000 annually. [Complaint ¶¶ 7, 48, 52 & p. 17; FAC ¶¶ 9, 50, 54 & pp. 17-18]
12 Dodd's resignation from IGATE, which she alleges was a constructive termination [Complaint ¶ 9;
13 FAC ¶ 11], was effective August 1, 2013. Dodd, at her suggestion and request, was thereafter
14 engaged as a consultant to IGATE through January 31, 2014. Dodd has thus been without
15 employment or mitigation income from IGATE from on and after February 1, 2014, a period of one
16 year. Dodd's claim for an award of damages for her lost compensation is therefore presently
17 approximately $300,000, based on Dodd's valuation of her lost compensation and her allegations of
18 actionable wrongs. Dodd additionally seeks recovery of punitive and exemplary damages and
19 attorneys' fees. The value of each of the foregoing items is to be included in the amount in
20 controversy in the State Court Action. *Hunt v. Washington State Apple Advertising Comm'n*, 432
21 U.S. 333 (1977) (value of injunctive relief considered in determining amount in controversy); *Bell v.*
22 *Preferred Life Assurance Society*, 320 U.S. 238, 240 (1943) (compensatory damages considered in
23 determining amount in controversy); *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir.
24 1998) (attorneys' fees authorized by statute included in the amount in controversy). Therefore, the
25 matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, as
26 required for removal. 28 U.S.C. §§ 1332(a), 1446(c)(2).

27       9.    Because service of the State Court Action has not yet been effected upon Srinath, and
28 because removal is not made solely under 28 U.S.C. § 1446(b)(2)(A), Srinath's consent to this

-3-

1    removal is not required. 28 U.S.C. § 1446(b)(2)(A).

2        10.    IGATE will promptly serve a copy of this Notice of Removal upon Dodd, furnish a

3    copy to Srinath, and file a copy of this Notice of Removal with the Superior Court of the State of

4    California in and for Alameda County, in compliance with 28 U.S.C. § 1446(d).

5        11.    At least one wrongful act alleged by Dodd to have occurred within the State of

6    California is alleged to have occurred in Alameda County. Dodd's IGATE place of employment was

7    in Fremont, Alameda County, California at the time of her alleged constructive discharge.

8    [Complaint ¶¶ 2, 30; FAC ¶¶ 4, 32] Dodd currently resides, and did reside at the time of her alleged

9    constructive discharge, in San Jose, Santa Clara County, California. [Complaint ¶ 1; FAC ¶¶ 4, 31-

10   32; Declaration of Suresh Nair ¶ 6 (attached hereto as Exhibit B) ("Nair Decl."); Declaration of

11   Michael C. Hallerud ¶¶ 2-3 & Exs. 1-2 (attached hereto as Exhibit C) ("Hallerud Decl.")] Dodd and

12   IGATE also agreed in their employment contract to jurisdiction and venue in any court or before any

13   arbitrator geographically located in Alameda County. [Nair Decl. ¶ 7 & Ex. 1] The State Court

14   Action is filed in the Superior Court of California in and for Alameda County, California. IGATE

15   has continuously from the time of Dodd's alleged constructive discharge to the present conducted

16   business in Alameda County, California. [Nair Decl. ¶¶ 5-6] Accordingly, removal of the State

17   Court Action to the Northern District of California is required by 28 U.S.C. § 1446(a) and post-

18   removal venue is correct in the Northern District of California. 28 U.S.C. §§ 1391(a)(1), (b)(2)-(3),

19   (c)-(d).

20       ///

21       ///

22

23

24

25

26

27

28

NOTICE OF REMOVAL UNDER 28 U.S.C. §§ 1332(a)(3) and 1441(a)-(b)

1       WHEREFORE, Defendant IGATE Technologies, Inc. respectfully removes Plaintiff Karetha

2  Dodd's State Court Action to the United States District Court for the Northern District of California

3  from the Superior Court of the State of California in and for Alameda County, pursuant to 28 U.S.C.

4  §§ 1332(a) and 1441(b).

5

6

7  DATED: January 30, 2015             NIXON PEABODY LLP

8

9                           By: _____

10                          Michael C. Hallerud
                             Bonnie Glatzer

11                          Attorneys for Defendant
                          IGATE TECHNOLOGIES, INC.

12

13

14  4835-9152-4896.6

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF REMOVAL UNDER 28 U.S.C. §§ 1332(a)(3) and 1441(a)-(b)

# Notice of Removal
# EXHIBIT A

## *Superior Court of California, County of Alameda*



## *Notice of Assignment of Judge for All Purposes*

Case Number: RG14742587
Case Title:     Dodd VS iGATE Technologies Inc., a Pennsylvania Corporation
Date of Filing: 09/29/2014

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

**Pursuant to Rule 3.734 of the California Rules of Court and Title 3 Chapter 2 of the Local Rules of the Superior Court of California, County of Alameda, this action is hereby assigned by the Presiding Judge for all purposes to:**

|  |  |
|---|---|
| **Judge:** | **Ioana Petrou** |
| **Department:** | **15** |
| **Address:** | **Administration Building** |
|  | **1221 Oak Street** |
|  | **Oakland CA  94612** |
| **Phone Number:** | **(510) 267-6931** |
| **Fax Number:** | **(510) 267-1503** |
| **Email Address:** | **Dept.15@alameda.courts.ca.gov** |

Under direct calendaring, this case is assigned to a single judge for all purposes including trial.

**Please note: In this case, any challenge pursuant to Code of Civil Procedure section 170.6 must be exercised within the time period provided by law.  (See Code Civ. Proc. §§ 170.6, subd. (a)(2) and 1013.)**

**NOTICE OF NONAVAILABILITY OF COURT REPORTERS:** Effective June 4, 2012, the court will not provide a court reporter for civil law and motion hearings, any other hearing or trial in civil departments, or any afternoon hearing in Department 201 (probate). Parties may arrange and pay for the attendance of a certified shorthand reporter. In limited jurisdiction cases, parties may request electronic recording.

Amended Local Rule 3.95 states: "Except as otherwise required by law, in general civil case and probate departments, the services of an official court reporter are not normally available. For civil trials, each party must serve and file a statement before the trial date indicating whether the party requests the presence of an official court reporter."

IT IS THE DUTY OF EACH PLAINTIFF AND CROSS COMPLAINANT TO SERVE A COPY OF THIS NOTICE IN ACCORDANCE WITH LOCAL RULES.

## General Procedures

Following assignment of a civil case to a specific department, all pleadings must be filed at the court facility where that department is located. The René C. Davidson Courthouse is the filing location for departments situated in the Alameda County Administration Building and the United States Post Office (see Local Rule, rule 1.9(d) effective as of 01/01/2013). All documents, with the exception of the original summons and the original civil complaint, shall have clearly typed on the face page of each document, under the case number, the following:

ASSIGNED FOR ALL PURPOSES TO
JUDGE Ioana Petrou
DEPARTMENT 15

All parties are expected to know and comply with the Local Rules of this Court, which are available on the Court's website at: http://www.alameda.courts.ca.gov/courts/rules/index.shtml and with the California Rules of Court, which are available at www.courtinfo.ca.gov.

Parties must meet and confer to discuss the effective use of mediation or other alternative dispute processes (ADR) prior to the Initial Case Management Conference. The court encourages parties to file a "Stipulation to Attend ADR and Delay Initial Case Management Conference for 90 Days". Plaintiff received that form in the ADR information package at the time the complaint was filed. The court's Web site also contains this form and other ADR information. If the parties do not stipulate to attend ADR, the parties must be prepared to discuss referral to ADR at the Initial Case Management Conference.

Contacts with Dept. 15 should be by email to Dept. 15@alameda.courts.ca.gov. You must provide copies of all email communications to each party (or their attorneys, if represented) at the same time you send the email to the Court and you must show that you have done so in your email. When a copy of a document must be transmitted to court staff, an email attachment is preferable to fax. Use of an email attachment or fax, however, is not a substitute for filing of pleadings or other documents. Inclusion of available email addresses in the caption of all filed papers, as required by CRC 2.111(1) is required.

Parties/attorneys must confer before scheduling a hearing date. Counsel are expected to be familiar and comply with the Statement of Professionalism and Civility, Alameda County Bar Association www.acbanet.org.

Counsel should consider and recommend creative, efficient approaches to valuing and resolving their case (CRC §3.724).

## Schedule for Department 15

The following scheduling information is subject to change at any time, without notice. Please contact the department at the phone number or email address noted above if you have questions.

- Trials generally are held: Unless otherwise advised, both court and jury trials are Mondays through Thursdays at 10:00 am through 4:30 pm; expect to be in the courtroom from 9:00 am to 5:00 pm. Cases may "trail" a trial in progress.

- Case Management Conferences are held: Mondays through Thursdays at 9:15 am and Fridays at 9:30 am. Timely filed and complete case management conference statements are required and may eliminate the need for a hearing.

- Law and Motion matters are heard:  Tuesdays, Wednesdays & Thursdays at 9:00 am. Email Dept. 15 for reservations. Include case name & number, title of motion and identity of moving party. Courtesy copies of all Law & Motion pleadings are to be submitted directly to Dept. 15.

- Settlement Conferences are heard:  As scheduled by the Judge. Court resources are limited, and counsel should consider other ADR alternatives. Conferences will be specially set when deemed appropriate.

- Ex Parte matters are heard:  The applicant must contact the clerk for a hearing date and provide CRC 3.1203(a) notice to all parties.  The applicant must appear, in person or by phone if allowed, unless it is a stipulation for an order or otherwise allowed under CRC 3.1207.

## Law and Motion Procedures

To obtain a hearing date for a Law and Motion or ex parte matter, parties must contact the department as follows:

- Motion Reservations
    Email:       Dept.15@alameda.courts.ca.gov

    The parties should check the tentative rulings on the court's website and notify the courtroom clerk and all other parties of plans to contest by 4:00 pm the day before the hearing.

- Ex Parte Matters
    Email:       Dept15@alameda.courts.ca.gov

## Tentative Rulings

The court may issue tentative rulings in accordance with the Local Rules.  Tentative rulings will become the Court's order unless contested in accordance with the Local Rules. Tentative rulings will be available at:

- Website:  www.alameda.courts.ca.gov/domainweb, Calendar Information for Dept. 15

- Phone:  1-866-223-2244

Dated:  10/01/2014

Presiding Judge,
Superior Court of California, County of Alameda

**CLERK'S CERTIFICATE OF MAILING**

I certify that the following is true and correct:  I am the clerk of the above-named court and not a party to this cause.  I served this Notice by placing copies in envelopes addressed as shown on the attached Notice of Initial Case Management Conference and then by sealing and placing them for collection, stamping or metering with prepaid postage, and mailing on the date stated below, in the United States mail at Alameda County, California, following standard court practices.

Executed on 10/02/2014

By

Deputy Clerk

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Randall B. Aiman-Smith, Esq., SBN 124599<br>Aiman-Smith & Marcy<br>7677 Oakport Street, Suite 1020<br>Oakland, California 94621<br>TELEPHONE NO.: 510/562-6800 FAX NO.: 510/562-6830<br>ATTORNEY FOR *(Name):* ras.asm@gmail.com | **FILED BY FAX**<br>**ALAMEDA COUNTY**<br><br>September 29, 2014<br><br>CLERK OF<br>THE SUPERIOR COURT<br>By Catherine Green, Deputy |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Alameda
STREET ADDRESS: 1225 Fallon Street
MAILING ADDRESS:
CITY AND ZIP CODE: Oakland, California 94612
BRANCH NAME: Unlimited Jurisdiction

**CASE NUMBER:**
**RG14742587**

CASE NAME:
DODD v. iGATE Technologies, Inc., et al.

| **CIVIL CASE COVER SHEET** | **Complex Case Designation** | CASE NUMBER: |
|---|---|---|
| ☑ Unlimited ☐ Limited<br>(Amount (Amount<br>demanded demanded is<br>exceeds $25,000) $25,000 or less) | ☐ Counter ☐ Joinder<br><br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | JUDGE:<br><br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
- ☐ Auto (22)
- ☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- ☐ Asbestos (04)
- ☐ Product liability (24)
- ☐ Medical malpractice (45)
- ☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- ☐ Business tort/unfair business practice (07)
- ☐ Civil rights (08)
- ☐ Defamation (13)
- ☐ Fraud (16)
- ☐ Intellectual property (19)
- ☐ Professional negligence (25)
- ☐ Other non-PI/PD/WD tort (35)

**Employment**
- ☑ Wrongful termination (36)
- ☐ Other employment (15)

**Contract**
- ☐ Breach of contract/warranty (06)
- ☐ Rule 3.740 collections (09)
- ☐ Other collections (09)
- ☐ Insurance coverage (18)
- ☐ Other contract (37)

**Real Property**
- ☐ Eminent domain/inverse condemnation (14)
- ☐ Wrongful eviction (33)
- ☐ Other real property (26)

**Unlawful Detainer**
- ☐ Commercial (31)
- ☐ Residential (32)
- ☐ Drugs (38)

**Judicial Review**
- ☐ Asset forfeiture (05)
- ☐ Petition re: arbitration award (11)
- ☐ Writ of mandate (02)
- ☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- ☐ Antitrust/Trade regulation (03)
- ☐ Construction defect (10)
- ☐ Mass tort (40)
- ☐ Securities litigation (28)
- ☐ Environmental/Toxic tort (30)
- ☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- ☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- ☐ RICO (27)
- ☐ Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
- ☐ Partnership and corporate governance (21)
- ☐ Other petition *(not specified above)* (43)

2. This case ☐ is ☑ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. ☑ monetary b. ☐ nonmonetary; declaratory or injunctive relief c. ☑ punitive
4. Number of causes of action *(specify):* Six (6)
5. This case ☐ is ☑ is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: September 29, 2014
Randall B. Aiman-Smith, Esq., SBN 124599
_____
(TYPE OR PRINT NAME) (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courtinfo.ca.gov |

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

iGATE Technologies Inc., a Pennsylvania Corporation; MUKUND
SRINATH, an individual, and DOES 1 through 200,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

KARETHA DODD, an individual,

| FOR COURT USE ONLY |
|---|
| *(SOLO PARA USO DE LA CORTE)* |

**FILED BY FAX**
ALAMEDA COUNTY
September 29, 2014
CLERK OF
THE SUPERIOR COURT
By Catherine Green, Deputy

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is: *(El nombre y dirección de la corte es):* Alameda<br>1225 Fallon Street<br>Oakland, California 94612 | CASE NUMBER:<br>*(Número del Caso):*<br>**RG14742587** |
|---|---|

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Randall B. Aiman-Smith, Esq., 7677 Oakport St., Ste. 1020, Oakland CA 94621 510/562-6800

| DATE: September 29, 2014<br>*(Fecha)* | Clerk, by _Cathy Green_<br>*(Secretario)* | , Deputy<br>*(Adjunto)* |
|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. [ ] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify):*

3. [ ] on behalf of *(specify):*

    under: [ ] CCP 416.10 (corporation)      [ ] CCP 416.60 (minor)
            [ ] CCP 416.20 (defunct corporation)      [ ] CCP 416.70 (conservatee)
            [ ] CCP 416.40 (association or partnership)      [ ] CCP 416.90 (authorized person)
            [ ] other *(specify):*
4. [ ] by personal delivery on *(date):*

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br>www.courtinfo.ca.gov |
|---|---|---|

RANDALL B. AIMAN-SMITH #124599
REED W.L. MARCY #191531
HALLIE VON ROCK #233152

**aiman-smith⚡marcy**

7677 oakport street  suite 1020
oakland       california      94621
t:510.562.6800  f:510.562.6830

Attorneys for Plaintiff
Karetha Dodd

**FILED BY FAX**
ALAMEDA COUNTY
September 29, 2014
CLERK OF
THE SUPERIOR COURT
By Catherine Green, Deputy
CASE NUMBER:
**RG14742587**

IN THE SUPERIOR COURT OF CALIFORNIA

IN AND FOR THE COUNTY OF ALAMEDA

UNLIMITED JURISDICTION

| | |
|---|---|
| KARETHA DODD, an individual,<br><br>    Plaintiff,<br><br>  vs.<br><br>iGATE Technologies Inc., a Pennsylvania Corporation; MUKUND SRINATH, an individual,  and DOES 1 through 200,<br><br>    Defendants. | Case No.:<br><br>**COMPLAINT FOR DAMAGES**<br><br>**Violation of Fair Employment and Housing Act (discrimination on basis of sex) (Government Code section 12940 *et seq.*); Sexual Assault (California Civil Code section 1708.5 and subparts); Assault; Battery; Intentional Infliction of Emotional Distress; and Negligence**<br><br>**Jury Trial Demanded** |

Complaint for Damages
*Dodd v.IGATE, et al.*                    Case no.

**Preliminary Allegations:**
**Parties, Jurisdiction, Venue**

Plaintiff is informed and believes and thereon alleges as follows:

    1.    Plaintiff Karetha Dodd is a competent, adult, African-American female, a citizen of Santa Clara County, California.

    2.    Defendant iGATE Technologies, Inc. (iGATE) is licensed to do business in California and does substantial business throughout the State of California, including the City of Fremont, Alameda County. iGATE employs many more than five persons in California.

    3.    Defendant Mukund Srinath is an adult male, a citizen and resident of the nation of India. At all relevant times, Srinath was employed as a Corporate Officer, Senior Vice President and the Global General Counsel of iGATE. The Global General Counsel is a top-level executive/management position, reporting only to the CEO, and CFO. As such, Srinath was managing agent of iGATE. At all relevant times, defendant Srinath was Plaintiff's supervisor.

    4.    Plaintiff is currently unaware of the true names and capacities of the defendants sued herein as Does 1 through 200 and therefore sues them by these fictitious names. Plaintiff will amend this complaint to state their true names and capacities when these have been ascertained. Defendants named herein as Does 1 through 200 are each in some way responsible for the injuries and damages to plaintiff as alleged herein.

**Factual Allegations**

    5.    Plaintiff is an attorney at law, licensed in both Illinois and Massachusetts. In October 2008, Plaintiff became employed by Patni Americas, Inc., a wholly-owned subsidiary of a publicly-traded large, India-based computer company, Patni Computer Systems Ltd. Plaintiff was employed as Patni's General Counsel/Head of Legal for North and South America, based in Cambridge, Massachusetts, and managing all legal staff and legal matters for Patni in North and South America.

/ / /

/ / /

6.     In May 2011, iGATE acquired Patni and Plaintiff began working for iGATE as Head of Legal for the Americas, based in Cambridge Massachusetts. Also in May 2011, Plaintiff's supervisor became defendant Mukund Srinath, who was Global General Counsel for iGATE and its subsidiaries.

7.     Plaintiff's position at Patni was the culmination of a career in law. Plaintiff went to a prestigious law school and immediately after graduating from law school began a career as a litigator and then as corporate counsel, finally working her way up to the position of General Counsel for iGATE. Such a job is one of the best jobs that any attorney can have in the United States. These jobs are scarce and highly sought after by the finest legal talent. Further, Plaintiff's compensation, including bonuses, benefits, and options, was approximately $300,000. At the same time, the job market in the United States for attorneys is generally poor, it has been poor for several years, and it is not expected to improve soon. It is difficult for any attorney to find a job, and it is particularly difficult to find the kind of corporate General Counsel job, with the responsibilities and compensation package that Plaintiff had achieved over her career. Thus, Plaintiff was highly motivated to preserve her relationships and her job as General Counsel for iGATE as she had no reasonable expectation of being able to find another job that was remotely comparable to the position she had attained through years of hard work and perseverance.

8.     As set forth herein, during her employment, Plaintiff was subjected to harassing behavior by her supervisor, and when Plaintiff refused to have a sexual relationship with him, he retaliated by taking negative employment actions against her as herein alleged. Moreover, as set forth herein, during her employment, Plaintiff was subjected to retaliation by her supervisor and other senior-level iGATE executives in the form of negative employment actions when Plaintiff gave truthful testimony about the possible sexual harassment of another iGATE employee, Araceli Roiz, at the hands of iGATE's CEO, Phaneesh Murthy.

9.     Plaintiff performed in an exemplary fashion and neither did any act, nor failed to do any act that would constitute any legitimate cause for her termination. Nevertheless, Plaintiff was constructively terminated from her position.

10. After iGATE's acquisition of Patni, and as Plaintiff worked for iGATE, she became increasingly aware of relationships and status within the company. Specifically, Plaintiff realized that her supervisor, Srinath, was close friends with all top level executives in the company, particularly the Global Head of Human Resources, Srinivas Kandula, the CEO, Phaneesh Murthy, and the CFO, Sujit Sicar. Thus, and significant to these allegations, Plaintiff became aware that the only persons to whom she might go with any problem with Srinath were, in fact, totally allied with Srinath.

11. In mid-April 2012, Plaintiff's supervisor, Srinath, visited the Cambridge, Massachusetts office where Plaintiff was based. It was considered part of the company culture that Plaintiff was required to entertain her supervisor, who was visiting from a foreign country. On Srinath's last day in that office, Plaintiff arranged to take him to dinner. During dinner, Srinath had several drinks after which he told Plaintiff that he wanted her to take him to a strip club. Plaintiff had no desire to go to a strip club, and particularly, no desire to do so with her supervisor, but Plaintiff did not feel she could refuse. Accordingly, Plaintiff agreed to take Srinath to a strip club. The club featured women in skimpy costumes, which they removed, and then danced naked in close proximity to male patrons, including Srinath.

12. After having one drink at the strip club, Plaintiff told Srinath that it had been a long day and she was ready to leave. Srinath agreed to leave only reluctantly, and this reluctance caused Plaintiff additional unease. Srinath and Plaintiff both got into a cab; Plaintiff informed the driver that they would be making two stops: first to drop her at her apartment, then continuing to drop Srinath at his hotel. However, once in the cab, Srinath began asking, then insisting, that plaintiff return with him to his hotel for "just one drink," "in the lobby." Plaintiff repeatedly demurred and Srinath repeatedly insisted. Plaintiff told Srinath, falsely, that she was not feeling well and really wanted to go home. Srinath – Plaintiff's supervisor – continued to strongly insist that she return to his hotel, for "just one drink." Feeling extremely pressured, Plaintiff agreed.

/ / /

/ / /

13. Upon returning to Srinath's hotel, Srinath and Plaintiff ordered a single drink, which she pointedly did not drink. Minutes after serving Srinath and Plaintiff their first (and only) drink, the bartender announced that they were closing early and it was "last call." Srinath then began insisting that Plaintiff come to his room for another drink. Plaintiff attempted to politely decline, but Srinath ignored her and continued to insist that she come to his room. When Srinath continued to aggressively insist that Plaintiff come to his room for a drink, Plaintiff finally stated that she must have eaten or drank something that was "off" because she was now getting physically ill and needed to go home immediately. This statement was not true: in fact, Plaintiff felt fine physically. It was, however, obvious to Plaintiff that Srinath was trying to get her into an intimate situation that was wholly inappropriate and Plaintiff was seeking a graceful way out of this dilemma.

14. Plaintiff found this experience unwelcome, humiliating, and upsetting, and Srinath knew, or is charged with knowing, that Plaintiff would react in this way. Further Srinath's actions violated iGATE's own anti-harassment policies; accordingly, Srinath knew that his actions were inappropriate and wrongful. In fact, at the end of the night, Srinath repeatedly told Plaintiff that she could not tell anyone where they had been.

15. Plaintiff hoped that the foregoing incident was the result of Srinath's drinking and being in a foreign country. Because Srinath was based in India, Plaintiff did not have to work in physical proximity to him and she hoped that this incident would blow over and not be repeated. Although she was aware that she could report Srinath's behavior, she also knew that there was no one in the Company to whom she could report who was not already allied with Srinath.

16. Plaintiff's understanding that she had nowhere to turn at iGATE was reinforced by another incident involving the CEO, Phaneesh Murthy. Murthy, who was married with two children, was carrying on an affair with an iGATE employee, Araceli Roiz ("Roiz") with whom Plaintiff was friendly. Murthy asked Roiz to request that Plaintiff join him and Roiz for dinner. When Plaintiff and Roiz arrived, Murthy was sitting at the table with a friend, another married, male executive, Tiger Ramesh.

17.    It quickly became obvious that this was not a professional dinner when Ramesh began inappropriately physically touching Plaintiff, including, rubbing his hands on her legs, grabbing her hands and trying to kiss her. All of this was occurring in front of Murthy, who did not intervene despite Plaintiff's repeated comments to Ramesh that she was uncomfortable with his behavior. Plaintiff endured the evening because, given Murthy's silence in light of her comments, she feared the professional repercussions of making a scene or prematurely departing.

18.    The next day Ramesh contacted Plaintiff to go on another date. Knowing that accepting his invitation, Plaintiff would, again, be put in an inappropriate, sexually aggressive situation, Plaintiff sought Roiz's intervention. However, Roiz instead pleaded with Plaintiff to agree to meet again with Ramesh. Moreover, Murthy came to Plaintiff's office to "suggest" that she accept Ramesh's invitation. Given that Murthy's relationship with Roiz was clearly inappropriate, and given that Murthy had personally asked Plaintiff to go out with his friend, Ramesh, Plaintiff knew Murthy would be displeased with Plaintiff if she refused, and that this would negatively affect her position at iGATE. Therefore, in an attempt to deal with this situation, Plaintiff placated Ramesh by sending several emails in which she agreed to go out with him at some time in the future. Plaintiff was then forced to find plausible excuses for canceling these "dates" at the last minute. Plaintiff never saw Ramesh in person again, and never intended to.

19.    The entire situation exuded a kind of sexual and moral corruption that revolted Plaintiff, but that she could not really complain about without going against the highest executives at iGATE. This was a highly distressing and upsetting set of circumstances for Plaintiff.

20.    During this same time, over the next several months, Plaintiff continued to be supervised by Srinath from India and she did not have to be in physical proximity to him. However, in September 2012, Plaintiff was required to travel to India to visit iGATE's headquarters.

/ / /

21.    On the last day of the trip, as Plaintiff was preparing to leave for the airport in a few hours, Srinath told Plaintiff that they would be having dinner at the corporate apartment. This was a large apartment with household staff, including cooks to prepare the meal. Plaintiff was somewhat nervous about this, but agreed because the cooks and staff would be at the apartment and she would not be alone with Srinath.

22.    Plaintiff went onto a balcony and Srinath came as well. Plaintiff and Srinath were talking when Srinath stated, "You don't find women like you and Roiz in India." In this statement Srinath demeaned, insulted, and harassed Plaintiff by equating her with another female employee who was, for whatever reason, having a relationship with an iGATE executive – something that Plaintiff would never do, and something that she had never remotely suggested she would be willing to do. To make clear that she was not interested in any sort of non-work relationship with any iGATE personnel, including Srinath, Plaintiff said: "I don't know what you mean; I am 15 years older than Roiz, I am an attorney, and I have done nothing but behave professionally at work." Despite this rebuff, a few moments later, without warning, Srinath grabbed Plaintiff by the shoulders and kissed her forcefully on the mouth. As Plaintiff was trying to get her wits, Srinath proposed that he and Plaintiff have a sexual relationship, carried on in secret from Srinath's wife and family. Srinath told Plaintiff, "You have a boyfriend now, and you know I am married, so we can do this without either of us thinking it will be a relationship or anything."

23.    Plaintiff was terribly insulted, humiliated and confused by this blatant and illegal proposition. She had spent her life creating a career as a corporate general counsel of exceptional ability and value to the organization, and now her supervisor – Srinath – was proposing reducing her to a concubine.

24.    Srinath then grabbed Plaintiff's hand and put it on his erect penis saying, "See what you do to me."

/ / /

/ / /

/ / /

25.    Plaintiff's reaction to this vicious sexual assault was to freeze, trying to keep from screaming, cursing or possibly even striking Srinath. Apparently, Srinath was emboldened by Plaintiff's frozen, shocked silence, because he next suggested that they go into one of the bedroom suites and get in the hot tub together.

26.    Plaintiff finally found her voice and with great effort managed to calmly say to Srinath: "We are not going to have any relationship except as co-workers; there is no way that anything else is going to happen." Plaintiff – alone in a foreign country and with no place else to go – then had to sit down to and excruciating dinner with Srinath until the call came from the lobby that Plaintiff's transportation to the airport had finally arrived.

27.    This sexual assault terrified, humiliated, and traumatized Plaintiff. But Plaintiff had nowhere to go. Plaintiff wanted to report this incident, but she was very afraid to do so and had no idea how to do so given the obvious support that Srinath had at iGATE, and given the cavalier attitude toward sexual harassment issues displayed by iGATE's highest executives. For example, as a member of the Harassment Committee, Plaintiff came to learn about the complete lack of an investigation of previous claims of sexual harassment and discrimination made by iGATE employees prior to Plaintiff's tenure as Head of Legal (Americas) for iGATE and, therefore, Plaintiff reasonably believed neither the CEO, nor iGATE as an organization, nor its highest executives, took its own policies seriously and, therefore, Plaintiff reasonably believed she had no one else to turn to for assistance. Plaintiff believed that her career at iGATE was over if she reported Srinath, and further, that after Srinath's denials and likelihood of no formal investigation to support the veracity of her version of events, she would never get a positive reference from iGATE, much less her supervisor – Srinath – and that she would, therefore, become a pariah in the entire legal marketplace and general counsel community and would, therefore, be unable to find another job.

28.    Plaintiff returned to the United States where she continued to work, supervised by Srinath.

/ / /

/ / /

1      29.    As General Counsel/Head of Legal for North and South America, Plaintiff was

2 responsible for contracts in these regions. In March 2013, the Head of Contracts, for all

3 regions other than North and South America, resigned from iGATE. Srinath told Plaintiff that

4 he intended to make her Global Head of Contracts, which would be a significant promotion in

5 responsibilities in that all members of the Contracts Team located throughout the world would

6 be reporting to Plaintiff. However, Srinath told Plaintiff that they should make the

7 announcement about Plaintiff's promotion together when he visited Fremont, California, where

8 Plaintiff now worked, the following month, i.e., April 2013.

9      30.    Srinath did come to the Fremont office in April 2013. During this trip, Plaintiff

10 asked Srinath on several occasions in conversations they had in Plaintiff's office, in a

11 conference room, and in the hallway of a seminar Srinath was attending, about the

12 announcement of her promotion. Plaintiff asked Srinath when he was intending to make the

13 announcement that Plaintiff was to be appointed Global Head of Contracts. Srinath repeatedly

14 told Plaintiff they would discuss the matter later. However, as Srinath's trip was ending,

15 Plaintiff decided to ask one more time. Srinath told Plaintiff that if she wanted to discuss the

16 promotion, Plaintiff should come to his hotel room at 8:00 p.m. that night and to bring a bottle

17 of wine. Because Srinath had previously sexually assaulted her, Plaintiff had no intention of

18 going to his room regardless of the circumstances. Rather than say this, however, she told

19 Srinath she could not meet with him because she was busy getting ready for a business trip to

20 Canada the following day, and was busy preparing.

21      31.    After returning from Canada, Plaintiff called Srinath, who was now back in

22 Bangalore, India, and asked him again when the announcement would be made that she was

23 being promoted to Global Head of Contracts. Srinath stated that Plaintiff's promised

24 promotion had been "put on hold" until her next visit to India, when they "could discuss it in

25 person." There was no business reason to put off Plaintiff's promised promotion and Srinath

26 proffered no reason for this delay or the need for an in-person discussion in India.

27 / / /

28 / / /

32.     Plaintiff never met again in person with Srinath, and she never received the promised promotion. No explanation for this refusal to promote was ever proffered by Srinath or anyone else at iGATE.

33.     Certain facts regarding the above-mentioned relationship between Murthy and Roiz are significant to Plaintiff's case here. Roiz potentially threatened a sexual harassment claim against Murthy. In approximately May 2013, Murthy made disclosures to iGATE's Board of Directors regarding his relationship with Roiz. The Board promptly fired Murthy from his position as CEO. Before his termination, Murthy's compensation package provided for tens of millions of dollars in bonuses and options based on his performance, most of which he was not eligible to receive once he was terminated. Thus, Murthy's ouster presented significant issues related to possible harassment claims by Roiz, and also, a significant financial dispute between Murthy and iGATE.

34.     As a result of these matters, iGATE's Board of Directors commenced an investigation into Murthy's actions. The principal outside investigator on the Murthy matter was California attorney Tom Wilson. As related herein, Plaintiff was a witness to various events regarding the relationship between Murthy and Roiz and, additionally, Plaintiff was then in charge of defending iGATE with regard to any possible claims by Roiz.

35.     Mr. Wilson asked Plaintiff to meet with him as a witness regarding the Murthy matter. Before that meeting with Wilson, Plaintiff called Srinath and informed him that she, Plaintiff, had a legal and moral obligation to tell the truth about the matter being investigated, that she would be answering all of Mr. Wilson's questions fully and honestly, and that those answers would conflict with what Plaintiff understood had been Srinath's prior statements regarding the Murthy matter. Srinath was upset and responded that he would contact Wilson and get him to stop the interview with Plaintiff. Plaintiff told Srinath that she could not be party to such an arrangement and that she was going to meet with Wilson and answer his questions fully and honestly.

/ / /

/ / /

36.     Within a few days of Srinath's attempt to subvert Wilson's investigation by silencing Plaintiff, Plaintiff met with Wilson.  At that meeting, Plaintiff answered Wilson's questions regarding the Murthy matter fully and completely.

37.     As part of his questions for Plaintiff, Wilson asked Plaintiff if she knew of any other sexual harassment issues at iGATE.  Plaintiff knew that Wilson was working for iGATE's Board of Directors and thus, her conversation with him presented a unique opportunity for her to communicate to the Board without interference by the high level executives that she had been dealing with.  At the same time, Plaintiff was concerned that any report she made would ultimately make its way back to Srinath without adequate investigation or action being taken by iGATE, resulting in her being further vulnerable to Srinath's harassment.  Accordingly, Plaintiff related the events that occurred between herself and Srinath; the events that she related were more than sufficient to show harassment in violation of California law, and in violation of iGATE's own policies.

38.     iGATE's Sexual Harassment Policy requires a written summary of any complaint and an opportunity to present a case to an impartial investigatory committee.  Plaintiff waited to receive the mandatory summary and notice of the committee formation and meeting, but none ever came.  However, within a week or two of her meeting with Wilson, Plaintiff realized that various executives with whom she had always had a good working relationship began to avoid her.

39.     After May 2013, i.e., after the meeting in which she reported Srinath for sexual harassment and truthfully described here impressions of the relationship between Murthy and Roiz, Srinath began a campaign of retaliation against Plaintiff by continually subjecting her to negative employment actions.

40.     Initially, Srinath became more distant towards Plaintiff and began to cut her out of meetings and decisions.  Then, Srinath began a more aggressive campaign against Plaintiff as described below.

/ / /

/ / /

41. Plaintiff suffered the following negative employment actions:

    a) Plaintiff was stripped of all responsibilities regarding the claims of Roiz; she was not permitted or invited to participate in another call or meeting regarding that matter, although it was clearly well within the purview of her responsibilities. No explanation for removing these responsibilities was ever provided.

    b) Srinath falsely reported to iGATE's CFO that Plaintiff was unwilling to work on litigation or claims related to Roiz and the Murthy matters; this was completely false (in fact, Plaintiff was anxious to work on those matters) and Srinath had no basis for believing these statements to be true; Srinath's statements conveyed the wholly false impression to the CFO – a highly placed iGATE executive who could substantially assist or hinder Plaintiff's career – that Plaintiff was not a team player and not willing to shoulder this controversial and difficult work.

    c) After the meeting with Wilson, and despite several weeks of telling Plaintiff that her promotion to Global Head of Contracts was going to be announced to the rest of the legal team after they worked out the details of the announcement in an "in-person meeting," Srinath finally told Plaintiff that her promised promotion was on hold indefinitely.

    d) One of Plaintiff's team, an attorney, had been performing at an extremely low level for more than two years, as documented by Plaintiff to Srinath. After ample opportunities with no improvement, Plaintiff informed Srinath that this employee should be terminated. Srinath gave Plaintiff the go-ahead for firing the employee and Plaintiff then informed the employee that he was fired. Without telling Plaintiff, Srinath immediately rehired the employee the following day, and told him he would be reporting directly to Srinath, effectively making him Plaintiff's equal or supervisor. Srinath's actions had no business purpose and were, in fact, directly contrary to the best interests of iGATE. Srinath's actions

/ / /

/ / /

e) completely undermined Plaintiff's authority and her relationships with her entire team, and were designed to force Plaintiff to work in humiliating and untenable conditions.

f) Plaintiff had developed, and for the preceding year, had been working on several issues with Srinath and various high-level members of the Human Resources Department regarding overhauling certain iGATE's polices, procedures, and contract terms relating to over-time pay to eligible California employees and the deletion of illegal non-compete restrictions contained in iGATE's U.S. Employment Agreement, employee background checks, and other significant labor-law compliance matters. After May 2013, over a period of a month, Human Resources representatives with whom she was discussing these issues began cancelling calls, deleting Plaintiff from email strings and refusing to return any of her telephone calls at Srinath's direct or indirect direction.

42.   Thus, as of June 2013, Plaintiff had been: repeatedly propositioned by Srinath; sexually assaulted by Srinath; repeatedly subjected to quid pro quo harassment whereby Srinath conditioned promotions and employment benefits on Plaintiff's having a sexual relationship with him; she had truthfully related her knowledge regarding the relationship between Murthy and Roiz; she had made a complaint regarding Srinath's actions, she had observed that no investigation of her complaint had been made, and she had endured significant retaliation as related herein.

43.   The foregoing conditions were such that no reasonable person could be expected to endure them; Plaintiff was unable to endure these conditions, and accordingly, Plaintiff was forced to resign her position at iGATE.

44.   iGATE failed to provide any method of ensuring that its executives, including Srinath, were aware of or complied with these policies or with the law.

45.   iGATE failed to reasonably investigate Plaintiff's report of sexual harassment. Srinath has admitted to iGATE personnel that he hugged and kissed Plaintiff and a note was purportedly placed in his file. However, according to iGATE's written policy, Plaintiff's

1  complaint should have resulted in a formal investigation in which Plaintiff was allowed to

2  participate, proffer witnesses and question Srinath in front of the investigators. Moreover,

3  Srinath's admission that he hugged and kissed Plaintiff should have triggered an investigation

4  that, at very least, included an interview with Plaintiff. No such reasonable investigation ever

5  happened during Plaintiff's employment.

6       46.    Plaintiff complained to defendant iGATE that she was subjected to

7  discriminatory and harassing actions and to termination. iGATE generally failed to provide an

8  adequate, meaningful, or reasonable process for investigating and/or resolving complaints such

9  as plaintiff's complaint and iGATE specifically failed to conduct a reasonable or adequate

10  investigation of plaintiff's complaint.

11       47.    iGATE otherwise failed to take reasonable steps to prevent and/or redress the

12  discrimination alleged herein.

13       48.    As a result of the actions of defendants as described herein, Plaintiff has suffered

14  damages, including lost wages, emotional distress, costs of mitigation, and other damages

15  according to proof at trial and in excess of the jurisdictional minimum of this Unlimited

16  Jurisdiction Court.

17       49.    In committing the acts herein complained of, Srinath acted intentionally,

18  deliberately, willfully, wantonly, and oppressively, and with conscious disregard for the rights

19  and safety of Plaintiff. Moreover, in failing to investigate Plaintiff's complaint, the Board of

20  Directors acted intentionally, deliberately, willfully, wantonly, and oppressively, and with

21  conscious disregard for the rights and safety of Plaintiff. Accordingly, Plaintiff is entitled to

22  punitive and exemplary damages in an amount according to proof at trial.

23       50.    The acts of iGATE alleged herein were carried out by iGATE supervisors and/or

24  managing agents of iGATE. iGATE had advance knowledge of the unfitness of the employees

25  and supervisors who acted as herein described, and iGATE employed and/or retained said

26  employees and supervisors with conscious disregard of Plaintiff's rights.

27       51.    Further, iGATE ratified the above-alleged acts of said employees, supervisors,

28  and/or managing agents.

52.    Srinath was a corporate officer and managing agent of iGATE such that Srinath's acts are the acts of iGATE and Plaintiff is, therefore, entitled to recover punitive and exemplary damages from iGATE in an amount according to proof.

53.    iGATE ratified the acts of Srinath by accepting the benefits of said actions after the fact, and by failing to conduct a reasonable investigation into Plaintiffs claims and Plaintiff is, therefore, entitled to recover punitive and exemplary damages from iGATE in an amount according to proof.

### First Cause of Action
### Violation of Fair Employment and Housing Act
### (Government Codes Section 12940, *et seq.*)

54.    Plaintiff here realleges all the preceding paragraphs of this complaint as though fully set forth.

55.    The actions of defendants, and each of them, as described herein constitute harassment and discrimination on the basis of sex as forbidden by Government Code section 12940 and subparts, including, *inter alia*, subdivisions (a), (c), (i), and (k) and plaintiff is entitled to recover general and special damages therefor.

56.    The acts of defendants were done knowingly, willfully, wantonly, oppressively, and maliciously, and plaintiff is entitled to recover punitive and exemplary damages therefore.

57.    As a result of the acts of defendants, plaintiff has been forced to hire an attorney and to bring this suit, and plaintiff is entitled to recover her attorney's fees.

58.    Plaintiff has exhausted all administrative remedies required by law in that, within the time provided by statute, plaintiff filed a complaint with California's Department of Fair Employment and Housing and received a "right to sue" letter from said Department.

59.    Accordingly, plaintiff has been damaged in an amount according to proof and in excess of the jurisdictional minimum of this Court.

### Second Cause of Action
### Sexual Assault
### (California Civil Code section 1708.5 and subparts)

60.    Plaintiff here realleges all the preceding paragraphs of this complaint as though fully set forth.

61. The facts alleged herein establish that Srinath did all of the following:

    a) acted with the intent to cause a harmful or offensive contact with an intimate part of Plaintiff, and a sexually offensive contact with Plaintiff resulted;

    b) acted with the intent to cause a harmful or offensive contact with Plaintiff by use of his intimate part, and a sexually offensive contact with Plaintiff resulted; and

    c) acted to cause an imminent apprehension of the conduct described in (a) and (b), above, and a sexually offensive contact with Plaintiff resulted.

62. Accordingly, Srinath, in the performance of his duties as an iGATE executive, committed sexual assault as defined in California law.

63. As a direct and proximate result of the acts of defendants and each of them described herein, Plaintiff has been injured in an amount according to proof and in excess of the jurisdictional minimum of this Court.

64. The conduct alleged herein was done deliberately and with intent to injure and with conscious disregard for the rights and safety of Plaintiff, and Plaintiff is entitled to recover punitive and exemplary damages therefore.

### Third Cause of Action
### Assault

65. Plaintiff here realleges all the preceding paragraphs of this complaint as though fully set forth.

66. As described herein, Srinath intentionally acted in such a manner as to cause a harmful and offensive contact with Plaintiff; Srinath's intentional acts placed Plaintiff in imminent apprehension of harmful and offensive contact with Plaintiff; and as a result of Srinath's conduct, Plaintiff was put in imminent apprehension of harmful and offensive contact by Srinath.

67. The acts alleged herein constitute the tort of assault by Srinath upon Plaintiff.

68. As a direct and proximate result of the acts of defendants and each of them described herein, Plaintiff has been injured in an amount according to proof and in excess of the jurisdictional minimum of this Court.

69.     The conduct alleged herein was done deliberately and with intent to injure and with conscious disregard for the rights and safety of Plaintiff, and Plaintiff is entitled to recover punitive and exemplary damages therefore.

### Fourth Cause of Action
### Battery

70.     Plaintiff here realleges all the preceding paragraphs of this complaint as though fully set forth.

71.     As described herein, Srinath intentionally acted in such a manner as to cause a harmful and offensive contact with the person of the Plaintiff.

72.     The acts alleged herein constitute the tort of battery by Srinath upon Plaintiff.

73.     As a direct and proximate result of the acts of defendants and each of them described herein, Plaintiff has been injured in an amount according to proof and in excess of the jurisdictional minimum of this Court.

74.     The conduct alleged herein was done deliberately and with intent to injure and with conscious disregard for the rights and safety of Plaintiff, and Plaintiff is entitled to recover punitive and exemplary damages therefore.

### Fifth Cause of Action
### Intentional Infliction of Emotional Distress

75.     Plaintiff here realleges all preceding paragraphs of this complaint as though fully set forth.

76.     Defendants, and each of them, by doing the acts herein alleged, subjected plaintiff to outrageous conduct which was reasonably likely to and did cause severe emotional distress to plaintiff.

77.     Plaintiff has suffered general and special damages as a result of the conduct alleged herein.

78.     The acts of defendants and each of them alleged herein were done willfully, oppressively, intentionally, and in disregard for the rights and safety of plaintiff and plaintiff is entitled to recover punitive and exemplary damages therefore.

**Sixth Cause of Action**
**Negligence**

79.     Plaintiff here realleges all the preceding paragraphs of this complaint as though fully set forth.

80.     The acts of the defendants and each of them as described herein were carried out negligently.

81.     As a direct and proximate result of the acts of defendants and each of them described herein, Plaintiff has been injured in an amount according to proof and in excess of the jurisdictional minimum of this Court.

**Wherefore, plaintiff prays as follows:**

1.     For general and special damages according to proof;

2.     for interest upon said damages at the maximum rate allowed by statute;

3.     for punitive and exemplary damages;

4.     for attorney's fees as provided by statute;

5.     for costs of suit incurred;

6.     for such other and further relief as the Court may deem just and proper.


DATED: September 29, 2014                    aiman-smith marcy


                                             _____
                                             Randall B. Aiman-Smith
                                             Attorneys for Plaintiff
                                             Karetha Dodd

# DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all cause of action and claims with respect to which Plaintiff has a right to jury trial.

DATED:  September 29, 2014

aiman-smith & marcy

Randall B. Aiman-Smith
Attorneys for Plaintiff
Karetha Dodd

RANDALL B. AIMAN-SMITH #124599
REED W.L. MARCY #191531
HALLIE VON ROCK #233152

**aiman-smith⚡marcy**

7877 oakport street  suite 1020
oakland     california    94621
t:510.562.6800  f:510.562.6830

Attorneys for Plaintiff
Karetha Dodd

FILED BY FAX
ALAMEDA COUNTY
January 15, 2015
CLERK OF
THE SUPERIOR COURT
By Dolores Silva, Deputy
CASE NUMBER:
RG14742587

IN THE SUPERIOR COURT OF CALIFORNIA

IN AND FOR THE COUNTY OF ALAMEDA

UNLIMITED JURISDICTION

| | |
|---|---|
| KARETHA DODD, an individual, | Case No.: RG14742587 |
| Plaintiff, | |
| vs. | **FIRST AMENDED COMPLAINT FOR DAMAGES** |
| iGATE Technologies Inc., a Pennsylvania Corporation; MUKUND SRINATH, an individual,  and DOES 1 through 200, | **Violation of Fair Employment and Housing Act (discrimination on basis of sex) (Government Code section 12940 *et seq.*); Sexual Assault (California Civil Code section 1708.5 and subparts); Assault; Battery; Intentional Infliction of Emotional Distress; and Negligence** |
| Defendants. | **Jury Trial Demanded** |

**Preliminary Allegations:**
**Parties, Jurisdiction, Venue**

Plaintiff is informed and believes and thereon alleges as follows:

1.   Plaintiff Karetha Dodd is a competent, adult, African-American female, over 40 years of age.

2.   Defendant iGATE Technologies, Inc. (iGATE) is licensed to do business in California and does substantial business throughout the State of California, including in Alameda County, California. At all times herein mentioned, iGATE had its United States headquarters in Alameda County, California. iGATE employs many more than five persons in California.

3.   Defendant Mukund Srinath is an adult male, a citizen and resident of the nation of India. At all relevant times, Srinath was employed as a Corporate Officer, Senior Vice President and the Global General Counsel of iGATE. The Global General Counsel is a top-level executive/management position, reporting only to the CEO, and CFO. As such, Srinath was a managing agent of iGATE. At all relevant times, defendant Srinath was Plaintiff's supervisor.

4.   Except as otherwise alleged, the events described herein concern Plaintiff's employment by defendant iGATE in Alameda County, California. Except as otherwise alleged, the events described herein took place in Alameda County California. Except as otherwise alleged herein, during the events described herein, Plaintiff was assigned by defendants to work in Alameda County California and was performing said work in Alameda County, California.

5.   Plaintiff is currently unaware of the true names and capacities of the defendants sued herein as Does 1 through 200 and therefore sues them by these fictitious names. Plaintiff will amend this complaint to state their true names and capacities when these have been ascertained. Defendants named herein as Does 1 through 200 are each in some way responsible for the injuries and damages to plaintiff as alleged herein.

/ / /

6.     Defendant iGATE and plaintiff Dodd have, by written contract, consented to exclusive jurisdiction and venue in the Alameda County Superior Court.

**Factual Allegations**

7.     Plaintiff is an attorney at law, licensed in both Illinois and Massachusetts. In October 2008, Plaintiff became employed by Patni Americas, Inc., a subsidiary of a large, publicly-traded, Indian tech company, Patni Computer Systems Ltd. Plaintiff was employed as Patni's General Counsel/Head of Legal for North and South America, located in Cambridge, Massachusetts, and managing all legal staff and legal matters for Patni in North and South America.

8.     In May 2011, iGATE acquired Patni and Plaintiff began working for iGATE as Head of Legal for the Americas, based in Cambridge Massachusetts. Also in May 2011, Plaintiff's supervisor became defendant Mukund Srinath, who was Global General Counsel for iGATE and its subsidiaries.

9.     Plaintiff's position at Patni was the culmination of a 20-year career in law. Plaintiff went to a prestigious law school and immediately after graduating from law school began a career as a litigator and then as corporate counsel, finally working her way up to the position of General Counsel for iGATE. Such a job is one of the best jobs that any attorney can have in the United States. These jobs are scarce and highly sought after by the finest legal talent. Further, Plaintiff's compensation, including bonuses, benefits, and options, was approximately $300,000. At the same time, the job market in the United States for attorneys is generally poor, it has been poor for several years, and it is not expected to improve soon. It is difficult for any attorney to find a job, and it is particularly difficult to find the kind of corporate General Counsel job, with the responsibilities and compensation package that Plaintiff had achieved over her career. Thus, Plaintiff was highly motivated to preserve her relationships and her job as General Counsel for iGATE as she had no reasonable expectation of being able to find another job that was remotely comparable to the position she had attained through years of hard work and perseverance.

/ / /

10.     As set forth herein, during her employment, Plaintiff was subjected to harassing behavior by her supervisor, and when Plaintiff refused to have a sexual relationship with him, he retaliated by taking negative employment actions against her as herein alleged.  Moreover, as set forth herein, during her employment, Plaintiff was subjected to retaliation by her supervisor and other senior-level iGATE executives in the form of negative employment actions when Plaintiff gave truthful testimony about the possible sexual harassment of another iGATE employee, Araceli Roiz, at the hands of iGATE's CEO, Phaneesh Murthy.

11.     Plaintiff performed in an exemplary fashion and neither did any act, nor failed to do any act that would constitute any legitimate cause for her termination.  Nevertheless, Plaintiff was constructively terminated from her position.

12.     After iGATE's acquisition of Patni, and as Plaintiff worked for iGATE, she became increasingly aware of relationships and status within the company.  Specifically, Plaintiff realized that her supervisor, Srinath, was close friends with all top level executives in the company, particularly the Global Head of Human Resources, Srinivas Kandula, the CEO, Phaneesh Murthy, and the CFO, Sujit Sicar.  Thus, and significant to these allegations, Plaintiff became aware that the only persons to whom she might go with any problem with Srinath were, in fact, totally allied with Srinath.

13.     In mid-April 2012, Plaintiff's supervisor, Srinath, visited the Cambridge, Massachusetts office where Plaintiff was based.  It was considered part of the company culture that Plaintiff was required to entertain her supervisor, who was visiting from a foreign country.  On Srinath's last day in that office, Plaintiff arranged to take him to dinner.  During dinner, Srinath had several drinks after which he told Plaintiff that he wanted her to take him to a strip club.  Plaintiff had no desire to go to a strip club, and particularly, no desire to do so with her supervisor, but Plaintiff did not feel she could refuse.  Accordingly, Plaintiff agreed to take Srinath to a strip club.  The club featured women in skimpy costumes, which they removed, and then danced naked in close proximity to male patrons, including Srinath.

/ / /

/ / /

1       14.    After having one drink at the strip club, Plaintiff told Srinath that it had been a

2 long day and she was ready to leave. Srinath agreed to leave only reluctantly, and this

3 reluctance caused Plaintiff additional unease. Srinath and Plaintiff both got into a cab; Plaintiff

4 informed the driver that they would be making two stops: first to drop her at her apartment,

5 then continuing to drop Srinath at his hotel. However, once in the cab, Srinath began asking,

6 then insisting, that plaintiff return with him to his hotel for "just one drink," "in the lobby."

7 Plaintiff repeatedly demurred and Srinath repeatedly insisted. Plaintiff told Srinath, falsely,

8 that she was not feeling well and really wanted to go home. Srinath – Plaintiff's supervisor –

9 continued to strongly insist that she return to his hotel, for "just one drink." Feeling extremely

10 pressured, Plaintiff agreed.

11       15.    Upon returning to Srinath's hotel, Srinath and Plaintiff ordered a single drink,

12 which she pointedly did not drink. Minutes after serving Srinath and Plaintiff their first (and

13 only) drink, the bartender announced that they were closing early and it was "last call."

14 Srinath then began insisting that Plaintiff come to his room for another drink. Plaintiff

15 attempted to politely decline, but Srinath ignored her and continued to insist that she come to

16 his room. When Srinath continued to aggressively insist that Plaintiff come to his room for a

17 drink, Plaintiff finally stated that she must have eaten or drank something that was "off"

18 because she was now getting physically ill and needed to go home immediately. This

19 statement was not true: in fact, Plaintiff felt fine physically. It was, however, obvious to

20 Plaintiff that Srinath was trying to get her into an intimate situation that was wholly

21 inappropriate and Plaintiff was seeking a graceful way out of this dilemma.

22       16.    Plaintiff found this experience unwelcome, humiliating, and upsetting, and

23 Srinath knew, or is charged with knowing, that Plaintiff would react in this way. Further

24 Srinath's actions violated iGATE's own anti-harassment policies; accordingly, Srinath knew

25 that his actions were inappropriate and wrongful. In fact, at the end of the night, Srinath

26 repeatedly told Plaintiff that she could not tell anyone where they had been.

27 / / /

28 / / /

First Amended Complaint for Damages
Dodd v.iGATE, et al.
Page 4       Case no. RG14742587

1        17.    Plaintiff hoped that the foregoing incident was the result of Srinath's drinking

2    and being in a foreign country. Because Srinath was based in India, Plaintiff did not usually

3    have to work in physical proximity to him and she hoped that this incident would blow over

4    and not be repeated. Although she was aware that she could report Srinath's behavior, she also

5    knew that there was no one in the Company to whom she could report who was not already

6    allied with Srinath.

7        18.    Plaintiff's understanding that she had nowhere to turn at iGATE was reinforced

8    by another incident involving the CEO, Phaneesh Murthy. Murthy, who was married with two

9    children, was carrying on an affair with an iGATE employee, Araceli Roiz ("Roiz") with

10   whom Plaintiff was friendly. Murthy asked Roiz to request that Plaintiff join him and Roiz for

11   dinner. When Plaintiff and Roiz arrived, Murthy was sitting at the table with a friend, another

12   married, male executive, Tiger Ramesh.

13       19.    It quickly became obvious that this was not a professional dinner when Ramesh

14   began inappropriately physically touching Plaintiff, including, rubbing his hands on her legs,

15   grabbing her hands and trying to kiss her. All of this was occurring in front of Murthy, who

16   did not intervene despite Plaintiff's repeated comments to Ramesh that she was uncomfortable

17   with his behavior. Plaintiff endured the evening because, given Murthy's silence in light of her

18   comments, she feared the professional repercussions of making a scene or prematurely

19   departing.

20       20.    The next day Ramesh contacted Plaintiff to go on another date. Knowing that

21   accepting his invitation, Plaintiff would, again, be put in an inappropriate, sexually aggressive

22   situation, Plaintiff sought Roiz's intervention. However, Roiz instead pleaded with Plaintiff to

23   agree to meet again with Ramesh. Moreover, Murthy came to Plaintiff's office to "suggest"

24   that she accept Ramesh's invitation. Given that Murthy's relationship with Roiz was clearly

25   inappropriate, and given that Murthy had personally asked Plaintiff to go out with his friend,

26   Ramesh, Plaintiff knew Murthy would be displeased with Plaintiff if she refused, and that this

27   would negatively affect her position at iGATE. Therefore, in an attempt to deal with this

28   situation, Plaintiff placated Ramesh by sending several emails in which she agreed to go out

1    with him at some time in the future. Plaintiff was then forced to find plausible excuses for

2    canceling these "dates" at the last minute. Plaintiff never saw Ramesh in person again, and

3    never intended to.

4         21.    Plaintiff was unwillingly placed into iGATE's corporate executive culture of

5    sexual and moral corruption that revolted Plaintiff, but that she could not complain about

6    without going against the highest executives at iGATE. At the same time that Plaintiff Dodd

7    was effectively prevented from challenging this corrupt corporate culture, defendant Srinath

8    was emboldened by it, such that he knew that whatever he did would be condoned, probably

9    admired, by his immediate superiors who were running the company. In addition to the

10   foregoing facts, Srinath also knew (though Plaintiff did not know) that Sunil Wadhwani,

11   iGATE's founder and member of the Board of Directors, was involved in a romantic and

12   sexual relationship with an administrative assistant, thus further communicating to Srinath that

13   his actions toward Plaintiff were not just tolerated, but approved of, at the executive level of

14   iGATE; thus, at the same time, Srinath was aware of, emboldened by, and capitalized on, this

15   morally-corrupt culture to accost and assault Plaintiff without fear of consequences.

16        22.    During this same time, over the next several months, Plaintiff continued to be

17   supervised by Srinath from India and she did not have to be in physical proximity to him.

18   However, in September 2012, Plaintiff was required to travel to India to visit iGATE's

19   headquarters.

20        23.    On the last day of the trip, as Plaintiff was preparing to leave for the airport in a

21   few hours, Srinath told Plaintiff that they would be having dinner at the corporate apartment.

22   This was a large apartment with household staff, including cooks to prepare the meal. Plaintiff

23   was somewhat nervous about this, but agreed because the cooks and staff would be at the

24   apartment and she would not be alone with Srinath.

25        24.    Plaintiff went onto a balcony and Srinath came as well. Plaintiff and Srinath

26   were talking when Srinath stated, "You don't find women like you and Roiz in India." In this

27   statement Srinath demeaned, insulted, and harassed Plaintiff by equating her with another

28   female employee who was, for whatever reason, having a relationship with an iGATE

1 executive – something that Plaintiff would never do, and something that she had never
2 remotely suggested she would be willing to do. To make clear that she was not interested in
3 any sort of non-work relationship with any iGATE personnel, including Srinath, Plaintiff said:
4 "I don't know what you mean; I am 15 years older than Roiz, I am an attorney, and I have done
5 nothing but behave professionally at work." Despite this rebuff, a few moments later, without
6 warning, Srinath grabbed Plaintiff by the shoulders and kissed her forcefully on the mouth. As
7 Plaintiff was trying to get her wits, Srinath proposed that he and Plaintiff have a sexual
8 relationship, carried on in secret from Srinath's wife and family. Srinath told Plaintiff, "You
9 have a boyfriend now, and you know I am married, so we can do this without either of us
10 thinking it will be a relationship or anything."

11     25.   Plaintiff was terribly insulted, humiliated and confused by this blatant and illegal
12 proposition. She had spent her life creating a career as a corporate general counsel of
13 exceptional ability and value to the organization, and now her supervisor – Srinath – was
14 proposing reducing her to a concubine.

15     26.   Srinath then grabbed Plaintiff's hand and put it on his erect penis saying, "See
16 what you do to me."

17     27.   Plaintiff's reaction to this vicious sexual assault was to freeze, trying to keep
18 from screaming, cursing or possibly even striking Srinath. Apparently, Srinath was
19 emboldened by Plaintiff's frozen, shocked silence, because he next suggested that they go into
20 one of the bedroom suites and get in the hot tub together.

21     28.   Plaintiff finally found her voice and with great effort managed to calmly say to
22 Srinath: "We are not going to have any relationship except as co-workers; there is no way that
23 anything else is going to happen." Plaintiff – alone in a foreign country and with no place else
24 to go – then had to sit down to and excruciating dinner with Srinath until the call came from
25 the lobby that Plaintiff's transportation to the airport had finally arrived.

26     29.   This sexual assault terrified, humiliated, and traumatized Plaintiff. But Plaintiff
27 had nowhere to go. Plaintiff wanted to report this incident, but she was very afraid to do so
28 and had no idea how to do so given the obvious support that Srinath had at iGATE, and given

1   the cavalier attitude toward sexual harassment issues displayed by iGATE's highest executives.

2   For example, as a member of the Harassment Committee, Plaintiff came to learn about the

3   complete lack of an investigation of previous claims of sexual harassment and discrimination

4   made by iGATE employees prior to Plaintiff's tenure as Head of Legal (Americas) for iGATE

5   and, therefore, Plaintiff reasonably believed neither the CEO, nor iGATE as an organization,

6   nor its highest executives, took its own policies seriously and, therefore, Plaintiff reasonably

7   believed she had no one else to turn to for assistance. Plaintiff believed that her career at

8   iGATE was over if she reported Srinath, and further, that after Srinath's denials and likelihood

9   of no formal investigation to support the veracity of her version of events, she would never get

10   a positive reference from iGATE, much less her supervisor – Srinath – and that she would,

11   therefore, become a pariah in the entire legal marketplace and general counsel community and

12   would, therefore, be unable to find another job.

13       30.    Plaintiff returned to the United States where she continued to work, supervised

14   by Srinath.

15       31.    As General Counsel/Head of Legal for North and South America, Plaintiff was

16   responsible for contracts in these regions. In March 2013, the Head of Contracts, for all

17   regions other than North and South America, resigned from iGATE. Srinath told Plaintiff that

18   he intended to make her Global Head of Contracts, which would be a significant promotion in

19   responsibilities in that all members of the Contracts Team located throughout the world would

20   be reporting to Plaintiff. However, Srinath told Plaintiff that they should make the

21   announcement about Plaintiff's promotion together when he visited Fremont, California, where

22   Plaintiff now worked, the following month, i.e., April 2013.

23       32.    Srinath did come to the Fremont office in April 2013. During this trip, Plaintiff

24   asked Srinath on several occasions in conversations they had in Plaintiff's office, in a

25   conference room, and in the hallway of a seminar Srinath was attending, about the

26   announcement of her promotion. Plaintiff asked Srinath when he was intending to make the

27   announcement that Plaintiff was to be appointed Global Head of Contracts. Srinath repeatedly

28   told Plaintiff they would discuss the matter later. However, as Srinath's trip was ending,

1    Plaintiff decided to ask one more time. Srinath told Plaintiff that if she wanted to discuss the
2    promotion, Plaintiff should come to his hotel room at 8:00 p.m. that night and to bring a bottle
3    of wine. Because Srinath had previously sexually assaulted her, Plaintiff had no intention of
4    going to his room regardless of the circumstances. Rather than say this, however, she told
5    Srinath she could not meet with him because she was busy getting ready for a business trip to
6    Canada the following day, and was busy preparing.

7        33.    After returning from Canada, Plaintiff called Srinath, who was now back in
8    Bangalore, India, and asked him again when the announcement would be made that she was
9    being promoted to Global Head of Contracts. Srinath stated that Plaintiff's promised
10   promotion had been "put on hold" until her next visit to India, when they "could discuss it in
11   person." There was no business reason to put off Plaintiff's promised promotion and Srinath
12   proffered no reason for this delay or the need for an in-person discussion in India.

13       34.    Plaintiff never met again in person with Srinath, and she never received the
14   promised promotion. No explanation for this refusal to promote was ever proffered by Srinath
15   or anyone else at iGATE.

16       35.    Certain facts regarding the above-mentioned relationship between Murthy and
17   Roiz are significant to Plaintiff's case here. Roiz potentially threatened a sexual harassment
18   claim against Murthy. In approximately May 2013, Murthy made disclosures to iGATE's
19   Board of Directors regarding his relationship with Roiz. The Board promptly fired Murthy
20   from his position as CEO. Before his termination, Murthy's compensation package provided
21   for tens of millions of dollars in bonuses and options based on his performance, most of which
22   he was not eligible to receive once he was terminated. Thus, Murthy's ouster presented
23   significant issues related to possible harassment claims by Roiz, and also, a significant
24   financial dispute between Murthy and iGATE.

25   / / /
26   / / /
27   / / /
28   / / /

36.   As a result of these matters, iGATE's Board of Directors commenced an investigation into Murthy's actions. The principal outside investigator on the Murthy matter was California attorney Tom Wilson. As related herein, Plaintiff was a witness to various events regarding the relationship between Murthy and Roiz and, additionally, Plaintiff was then in charge of defending iGATE with regard to any possible claims by Roiz.

37.   Mr. Wilson asked Plaintiff to meet with him as a witness regarding the Murthy matter. Before that meeting with Wilson, Plaintiff called Srinath and informed him that she, Plaintiff, had a legal and moral obligation to tell the truth about the matter being investigated, that she would be answering all of Mr. Wilson's questions fully and honestly, and that those answers would conflict with what Plaintiff understood had been Srinath's prior statements regarding the Murthy matter. Srinath was upset and responded that he would contact Wilson and get him to stop the interview with Plaintiff. Plaintiff told Srinath that she could not be party to such an arrangement and that she was going to meet with Wilson and answer his questions fully and honestly.

38.   Within a few days of Srinath's attempt to subvert Wilson's investigation by silencing Plaintiff, Plaintiff met with Wilson. At that meeting, Plaintiff answered Wilson's questions regarding the Murthy matter fully and completely.

39.   As part of his questions for Plaintiff, Wilson asked Plaintiff if she knew of any other sexual harassment issues at iGATE. Plaintiff knew that Wilson was working for iGATE's Board of Directors and thus, her conversation with him presented a unique opportunity for her to communicate to the Board without interference by the high level executives that she had been dealing with. At the same time, Plaintiff was concerned that any report she made would ultimately make its way back to Srinath without adequate investigation or action being taken by iGATE, resulting in her being further vulnerable to Srinath's harassment. Accordingly, Plaintiff related the events that occurred between herself and Srinath; the events that she related were more than sufficient to show harassment in violation of California law, and in violation of iGATE's own policies.

/ / /

40.   iGATE's Sexual Harassment Policy requires a written summary of any complaint and an opportunity to present a case to an impartial investigatory committee. Plaintiff waited to receive the mandatory summary and notice of the committee formation and meeting, but none ever came. However, within a week or two of her meeting with Wilson, Plaintiff realized that various executives with whom she had always had a good working relationship began to avoid her.

41.   After May 2013, i.e., after the meeting in which she reported Srinath for sexual harassment and truthfully described here impressions of the relationship between Murthy and Roiz, Srinath began a campaign of retaliation against Plaintiff by continually subjecting her to negative employment actions.

42.   Initially, Srinath became more distant towards Plaintiff and began to cut her out of meetings and decisions. Then, Srinath began a more aggressive campaign against Plaintiff as described below.

43.   Plaintiff suffered the following negative employment actions:

a) Plaintiff was stripped of all responsibilities regarding the claims of Roiz; she was not permitted or invited to participate in another call or meeting regarding that matter, although it was clearly well within the purview of her responsibilities. No explanation for removing these responsibilities was ever provided.

b) Srinath falsely reported to iGATE's CFO that Plaintiff was unwilling to work on litigation or claims related to Roiz and the Murthy matters; this was completely false (in fact, Plaintiff was anxious to work on those matters) and Srinath had no basis for believing these statements to be true; Srinath's statements conveyed the wholly false impression to the CFO – a highly placed iGATE executive who could substantially assist or hinder Plaintiff's career – that Plaintiff was not a team player and not willing to shoulder this controversial and difficult work.

c) After the meeting with Wilson, and despite several weeks of telling Plaintiff that her promotion to Global Head of Contracts was going to be announced to the rest of the legal team after they worked out the details of the announcement in an "in-

1   person meeting," Srinath finally told Plaintiff that her promised promotion was
2   on hold indefinitely.
3   d) One of Plaintiff's team, an attorney, had been performing at an extremely low
4   level for more than two years, as documented by Plaintiff to Srinath. After
5   ample opportunities with no improvement, Plaintiff informed Srinath that this
6   employee should be terminated. Srinath gave Plaintiff the go-ahead for firing the
7   employee and Plaintiff then informed the employee that he was fired. Without
8   telling Plaintiff, Srinath immediately rehired the employee the following day, and
9   told him he would be reporting directly to Srinath, effectively making him
10  Plaintiff's equal or supervisor. Srinath's actions had no business purpose and
11  were, in fact, directly contrary to the best interests of iGATE. Srinath's actions
12  e) completely undermined Plaintiff's authority and her relationships with her entire
13  team, and were designed to force Plaintiff to work in humiliating and untenable
14  conditions.
15  f) Plaintiff had developed, and for the preceding year, had been working on several
16  issues with Srinath and various high-level members of the Human Resources
17  Department regarding overhauling certain iGATE's polices, procedures, and
18  contract terms relating to over-time pay to eligible California employees and the
19  deletion of illegal non-compete restrictions contained in iGATE's U.S.
20  Employment Agreement, employee background checks, and other significant
21  labor-law compliance matters. After May 2013, over a period of a month,
22  Human Resources representatives with whom she was discussing these issues
23  began cancelling calls, deleting Plaintiff from email strings and refusing to return
24  any of her telephone calls at Srinath's direct or indirect direction.
25      44.     Thus, as of June 2013, Plaintiff had been: repeatedly propositioned by Srinath;
26  sexually assaulted by Srinath; repeatedly subjected to quid pro quo harassment whereby
27  Srinath conditioned promotions and employment benefits on Plaintiff's having a sexual
28  relationship with him; she had truthfully related her knowledge regarding the relationship

1   between Murthy and Roiz; she had made a complaint regarding Srinath's actions, she had

2   observed that no investigation of her complaint had been made, and she had endured

3   significant retaliation as related herein.

4       45.   The foregoing conditions were such that no reasonable person could be expected

5   to endure them; Plaintiff was unable to endure these conditions, and accordingly, Plaintiff was

6   forced to resign her position at iGATE.

7       46.   iGATE failed to provide any method of ensuring that its executives, including

8   Srinath, were aware of or complied with these policies or with the law.

9       47.   iGATE failed to reasonably investigate Plaintiff's report of sexual harassment.

10  Srinath has admitted to iGATE personnel that he hugged and kissed Plaintiff and a note was

11  purportedly placed in his file. However, according to iGATE's written policy, Plaintiff's

12  complaint should have resulted in a formal investigation in which Plaintiff was allowed to

13  participate, proffer witnesses and question Srinath in front of the investigators. Moreover,

14  Srinath's admission that he hugged and kissed Plaintiff should have triggered an investigation

15  that, at very least, included an interview with Plaintiff. No such reasonable investigation ever

16  happened during Plaintiff's employment.

17      48.   Plaintiff complained to defendant iGATE that she was subjected to

18  discriminatory and harassing actions and to termination. iGATE generally failed to provide an

19  adequate, meaningful, or reasonable process for investigating and/or resolving complaints such

20  as plaintiff's complaint and iGATE specifically failed to conduct a reasonable or adequate

21  investigation of plaintiff's complaint.

22      49.   iGATE otherwise failed to take reasonable steps to prevent and/or redress the

23  discrimination alleged herein.

24      50.   As a result of the actions of defendants as described herein, Plaintiff has suffered

25  damages, including lost wages, emotional distress, costs of mitigation, and other damages

26  according to proof at trial and in excess of the jurisdictional minimum of this Unlimited

27  Jurisdiction Court.

28  / / /

1     51.   In committing the acts herein complained of, Srinath acted intentionally,

2 deliberately, willfully, wantonly, and oppressively, and with conscious disregard for the rights

3 and safety of Plaintiff. Moreover, in failing to investigate Plaintiff's complaint, the Board of

4 Directors acted intentionally, deliberately, willfully, wantonly, and oppressively, and with

5 conscious disregard for the rights and safety of Plaintiff. Accordingly, Plaintiff is entitled to

6 punitive and exemplary damages in an amount according to proof at trial.

7     52.   The acts of iGATE alleged herein were carried out by iGATE supervisors and/or

8 managing agents of iGATE. iGATE had advance knowledge of the unfitness of the employees

9 and supervisors who acted as herein described, and iGATE employed and/or retained said

10 employees and supervisors with conscious disregard of Plaintiff's rights.

11     53.   Further, iGATE ratified the above-alleged acts of said employees, supervisors,

12 and/or managing agents.

13     54.   Srinath was a corporate officer and managing agent of iGATE such that Srinath's

14 acts are the acts of iGATE and Plaintiff is, therefore, entitled to recover punitive and

15 exemplary damages from iGATE in an amount according to proof.

16     55.   iGATE ratified the acts of Srinath by accepting the benefits of said actions after

17 the fact, and by failing to conduct a reasonable investigation into Plaintiffs claims and Plaintiff

18 is, therefore, entitled to recover punitive and exemplary damages from iGATE in an amount

19 according to proof.

20                              **First Cause of Action**
               **Violation of Fair Employment and Housing Act**

21                 **(Government Codes Section 12940, *et seq.*)**

22     56.   Plaintiff here realleges all the preceding paragraphs of this complaint as though

23 fully set forth.

24     57.   The actions of defendants, and each of them, as described herein constitute

25 harassment and discrimination on the basis of sex as forbidden by Government Code section

26 12940 and subparts, including, *inter alia*, subdivisions (a), (c), (i), and (k) and plaintiff is

27 entitled to recover general and special damages therefor.

28 / / /

58.    The acts of defendants were done knowingly, willfully, wantonly, oppressively, and maliciously, and plaintiff is entitled to recover punitive and exemplary damages therefore.

59.    As a result of the acts of defendants, plaintiff has been forced to hire an attorney and to bring this suit, and plaintiff is entitled to recover her attorney's fees.

60.    Plaintiff has exhausted all administrative remedies required by law in that, within the time provided by statute, plaintiff filed a complaint with California's Department of Fair Employment and Housing and received a "right to sue" letter from said Department.

61.    Accordingly, plaintiff has been damaged in an amount according to proof and in excess of the jurisdictional minimum of this Court.

**Second Cause of Action**
**Sexual Assault**
**(California Civil Code section 1708.5 and subparts)**

62.    Plaintiff here realleges all the preceding paragraphs of this complaint as though fully set forth.

63.    The facts alleged herein establish that Srinath did all of the following:

    a) acted with the intent to cause a harmful or offensive contact with an intimate part of Plaintiff, and a sexually offensive contact with Plaintiff resulted;

    b) acted with the intent to cause a harmful or offensive contact with Plaintiff by use of his intimate part, and a sexually offensive contact with Plaintiff resulted; and

    c) acted to cause an imminent apprehension of the conduct described in (a) and (b), above, and a sexually offensive contact with Plaintiff resulted.

64.    Accordingly, Srinath, in the performance of his duties as an iGATE executive, committed sexual assault as defined in California law.

65.    As a direct and proximate result of the acts of defendants and each of them described herein, Plaintiff has been injured in an amount according to proof and in excess of the jurisdictional minimum of this Court.

66.    The conduct alleged herein was done deliberately and with intent to injure and with conscious disregard for the rights and safety of Plaintiff, and Plaintiff is entitled to recover punitive and exemplary damages therefore.

**Third Cause of Action**
**Assault**

67.   Plaintiff here realleges all the preceding paragraphs of this complaint as though fully set forth.

68.   As described herein, Srinath intentionally acted in such a manner as to cause a harmful and offensive contact with Plaintiff; Srinath's intentional acts placed Plaintiff in imminent apprehension of harmful and offensive contact with Plaintiff; and as a result of Srinath's conduct, Plaintiff was put in imminent apprehension of harmful and offensive contact by Srinath.

69.   The acts alleged herein constitute the tort of assault by Srinath upon Plaintiff.

70.   As a direct and proximate result of the acts of defendants and each of them described herein, Plaintiff has been injured in an amount according to proof and in excess of the jurisdictional minimum of this Court.

71.   The conduct alleged herein was done deliberately and with intent to injure and with conscious disregard for the rights and safety of Plaintiff, and Plaintiff is entitled to recover punitive and exemplary damages therefore.

**Fourth Cause of Action**
**Battery**

72.   Plaintiff here realleges all the preceding paragraphs of this complaint as though fully set forth.

73.   As described herein, Srinath intentionally acted in such a manner as to cause a harmful and offensive contact with the person of the Plaintiff.

74.   The acts alleged herein constitute the tort of battery by Srinath upon Plaintiff.

75.   As a direct and proximate result of the acts of defendants and each of them described herein, Plaintiff has been injured in an amount according to proof and in excess of the jurisdictional minimum of this Court.

/ / /

/ / /

76. The conduct alleged herein was done deliberately and with intent to injure and with conscious disregard for the rights and safety of Plaintiff, and Plaintiff is entitled to recover punitive and exemplary damages therefore.

### Fifth Cause of Action
### Intentional Infliction of Emotional Distress

77. Plaintiff here realleges all preceding paragraphs of this complaint as though fully set forth.

78. Defendants, and each of them, by doing the acts herein alleged, subjected plaintiff to outrageous conduct which was reasonably likely to and did cause severe emotional distress to plaintiff.

79. Plaintiff has suffered general and special damages as a result of the conduct alleged herein.

80. The acts of defendants and each of them alleged herein were done willfully, oppressively, intentionally, and in disregard for the rights and safety of plaintiff and plaintiff is entitled to recover punitive and exemplary damages therefore.

### Sixth Cause of Action
### Negligence

81. Plaintiff here realleges all the preceding paragraphs of this complaint as though fully set forth.

82. The acts of the defendants and each of them as described herein were carried out negligently.

83. As a direct and proximate result of the acts of defendants and each of them described herein, Plaintiff has been injured in an amount according to proof and in excess of the jurisdictional minimum of this Court.

**Wherefore, plaintiff prays as follows:**

1. For general and special damages according to proof;
2. for interest upon said damages at the maximum rate allowed by statute;
3. for punitive and exemplary damages;

1    4.    for attorney's fees as provided by statute;

2    5.    for costs of suit incurred;

3    6.    for such other and further relief as the Court may deem just and proper.

4

5  DATED: January 15, 2015                 aiman-smith marcy

6

7

8                                          Randall B. Aiman-Smith
                                           Attorneys for Plaintiff
9                                          Karetha Dodd

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## DEMAND FOR JURY TRIAL

2

3          Plaintiff hereby demands a jury on all cause of action and claims with respect to which

4     Plaintiff has a right to jury trial.

5

6

7     DATED:  January 15, 2015                    aiman-smith marcy

8

9                                                 _____

10                                               Randall B. Aiman-Smith
                                                  Attorneys for Plaintiff
11                                                Karetha Dodd

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Notice of Removal
# EXHIBIT B

1   MICHAEL C. HALLERUD, State Bar No. 68971
    hallerud@nixonpeabody.com
2   BONNIE GLATZER, State Bar No. 147804
    bglatzer@nixonpeabody.com
3   NIXON PEABODY LLP
    One Embarcadero Center, 18th Floor
4   San Francisco, California 94111-3600
    Telephone: (415) 984-8200
5   Facsimile: (415) 984-8300

6   Attorneys for Defendant
    IGATE TECHNOLOGIES, INC.
7

8
                 IN THE UNITED STATES DISTRICT COURT
9
                FOR THE NORTHERN DISTRICT OF CALIFORNIA
10

11
    KARETHA DODD,                        Case No.
12
                         Plaintiff,
13                                       DECLARATION OF SURESH NAIR IN
          v.                             SUPPORT OF NOTICE OF REMOVAL
14
    IGATE TECHNOLOGIES, INC., a Pennsylvania
15  corporation; MUKUND SRINATH, an individual;
    and DOES 1 through 200,
16
                         Defendants.
17

18        SURESH NAIR does hereby depose and declare:

19        1.    I am employed by IGATE Technologies, Inc. as its Controller (North America). I

20  have personal knowledge of the facts set forth below as Controller (North America) and as a

21  custodian of the books and records of IGATE Technologies, Inc. If called upon to testify, I would

22  testify competently to the facts set forth in this Declaration.

23        2.    IGATE Technologies, Inc. has at all times been a corporation organized under the

24  laws of the State of Pennsylvania.

25        3.    IGATE Technologies, Inc.'s corporate headquarters and principal place of business

26  are, and have been since before September 29, 2014, located in the Township of Bridgewater in the

27  State of New Jersey. IGATE Technologies, Inc.'s principal executive officers maintain their offices

28  in Bridgewater, New Jersey. Those principal executive officers dir ect, control, and coordinate

1   IGATE's business from Bridgewater, New Jersey.

2       4.      The IGATE Technologies, Inc. executive officers stationed in Bridgewater, New

3   Jersey include:

4           a. President & Chief Executive Officer Ashok Vemuri;

5           b. Vice President, Human Resources (Americas Region) L.S. Srinivas;

6           c. Senior Vice President, Legal (Americas, Europe, Australia, Asia) Jeffrey Friedel;

7           d. Senior Vice President, Manufacturing (North America) Abhay Mahagaokar;

8           e. Senior Vice President (General Electric Account) Lalit Khandelwal;

9           f. Senior Vice President, Insurance, Healthcare, Life Sciences (North America) Ganesh Iyer;

10          g. Senior Vice President, IBAS Partha Deka; and

11          h. Controller (North America) Suresh Nair.

12      5.      Less than nine percent of IGATE Technologies, Inc. employees are employed in

13  California.  IGATE Te chnologies, Inc. has maintained a place of business in Alameda County

14  continuously from before 2012 to the present.

15      6.      IGATE Technologies, Inc.'s records of which I am a custodian record that Plaintiff

16  Karetha Dodd's place of residence at the time of her resignation from IGATE Technologies, Inc. was

17  360 S. Market Street, No. 528, San Jose, California.

18      7.      Attached hereto as Exhibit 1 is a true and correct copy, from the IGATE Technologies,

19  Inc. records of which I am a custodian, of the letter employment agreement, dated March 15, 2012,

20  between IGATE Technologies, Inc. and Karetha A. Dodd, excluding its attachments.  Section 9 of

21  Exhibit 1 provides in pertinent part, "Jurisdiction and venue is exclusively limited in any proceeding

22  by the Company or Employee to enforce their rights hereunder to any court or arbitrator

23  geographically located in Alameda County, California."

24      ///

25      ///

26

27

28

DECLARATION OF SURESH NAIR iso NOTICE OF REMOVAL

1          I declare the foregoing is true under penalty of perjury under the laws of the United States and

2    the State of New Jersey.

3          Executed at Bridgewater, New Jersey, this 29th day of January 2015.

4

5    _____

6                                     Suresh Nair

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF SURESH NAIR iso NOTICE OF REMOVAL

**Nair Declaration**
**EXHIBIT 1**

OLD EIN 61442


iTOPS for Business Outcomes

March 15, 2012

Karetha A Dodd
200 Captains Row #502
Chelsea, MA 02150

Dear Karetha,

In conjunction with the acquisition of Patni Computers Limited and its subsidiary Patni Americas, Inc. by iGATE Corporation, iGATE Patni hereby offers to continue your employment with iGATE Technologies Inc. (iGATE) in the position of <u>Vice President</u> with effect from April 1, 2012. You may note, this offer is valid for acceptance until March 31, 2012. The offer stands automatically withdrawn after this date unless based on mutual consent the date is extended in writing by iGATE.

1.      <u>DUTIES</u>: You shall use your best energies and abilities on a full-time basis to perform the employment duties assigned to you from time to time and also shall comply with all rules, regulations and procedures of the Company. You are employed on an at-will basis and your performance will be reviewed as per the Company's performance management review, i.e. April every year.  During your employment you shall not directly or indirectly usurp any corporate opportunities or otherwise engage in any conduct adverse to the best interests of the Company.  Also, you are instructed not to divulge any confidential information of, or violate any agreement with, your prior employers or their clients.  Your services would be transferable to any of our global locations based on business needs.

2.      <u>COMPENSATION</u>: Employee's annual base salary and other compensation as of the date of this Agreement are as set forth on Attachment A hereto.  Said wages and compensation are subject to being reviewed and modified by the Company.  The Company shall be entitled to withhold from any payments to Employee pursuant to the provisions of this Agreement any amounts required by any applicable taxing or other authority, or any amounts loaned to the Employee by the Company.

3.      <u>BENEFITS.</u>  Your benefits for 2012 will remain intact until 12/31/2012 or your date of termination, whichever is sooner.

4.      <u>POLICIES AND PRACTICES</u>: Employee agrees to abide by all Company rules, regulations, policies, practices and procedures which the Company may amend from time to time. As an employee of iGATE, you will be subject to the provisions of the iGATE North American Employee Handbook.  A copy of the Handbook is being provided to you.

5.      <u>REPORTS</u>: You will provide Company with any reports that are deemed necessary, including periodic summaries of your work-related activities and accomplishments.

6.      <u>TERMINATION</u>: Employment with Company is on an "at will" basis.  However, either party may terminate this association by giving two weeks notice or on payment of salary in lieu of the same. However, in the event of any discrepancy or untrue information found in your application form or resume, willful neglect of your duties, breach of trust, gross indiscipline or any other serious dereliction of duties that may be prejudicial to the interests of the company, the company has the discretion to terminate your services forthwith or with such notice as it deems fit and without any notice pay whatsoever. In case you leave the Company within one year of joining all expenses incurred by the Company on relocation and settlement expenses shall be reimbursed by you to the Company.

Patni Americas, Inc., One Broadway, 13th Floor, Cambridge, MA 02142
T: +1-617-914-8000 | F: +1-617-914-8200 | E-mail: igatepatni-usa@igatepatni.com

Corporate Headquarters: Akruti Softech Park, M.I.D.C., Cross Road No. 21, Andheri (East), Mumbai - 400093, India
T: +91-22-66390500 | F: +91-22-28321750 | www.igatepatni.com



7.     AGREEMENT NOT TO COMPETE: In order to protect the business interest and goodwill of the Company with respect to Customers and accounts of Company, and to protect Trade Secrets and Confidential Information as those terms are defined in Attachment B, Employee covenants and agrees that for the entire period of time that this Agreement remains in effect, and for a period of one (1) year after termination of Employee's employment for any reason, Employee will not:

(a)     directly or indirectly contact any Customer of the Company for the purpose of soliciting such Customer to purchase, lease or license a product or service that is the same as, similar to, or in competition with those products and/or services made, rendered, offered or under development by the Company;

(b)     directly or indirectly employ, or knowingly permit any company or business directly or indirectly controlled by the Employee to employ any person who is employed by the Company at any time during the term of this Agreement, or in any manner facilitate the leaving of any such person from his or her employment with the Company;

(c)     directly or indirectly interfere with or attempt to disrupt the relationship, contractual or otherwise, between the Company and any of its employees or solicit, induce, or attempt to induce employees of the Company to terminate employment with the Company and become self-employed or employed with others in the same or similar business or any product line or service provided by Company; or

(d)     directly or indirectly engage in any activity or business as a consultant, independent contractor, agent, employee, officer, partner, director or otherwise, alone or in association with any other person, corporation or other entity, in any Competing Business operating within the United States or any other country where the Employee has worked and/or conducted business for the Company within the six (6) months period prior to the termination of Employee's employment. "Competing Business" shall mean any individual, corporation, partnership, business or other entity which operates or attempts to operate a business which provides, designs, develops, markets, engages in, invests in, produces or sells any products, services, or businesses which are the same or similar to those produced, marketed, invested in or sold by the Company.

"Customer" shall mean any individual, corporation, partnership, business or other entity, whether for-profit or not-for-profit (i) whose existence and business is known to Employee as a result of Employee's access to the Company's business information, Confidential Information, customer lists or customer account information; (ii) that is a business entity or individual with whom the Company has contracted or negotiated during the one (1) year period preceding the termination of Employee's employment; or (iii) who is or becomes a prospective client, customer or acquisition candidate of the Company during the period of Employee's employment.

8.     NONDISCLOSURE AND NONUSE OF CONFIDENTIAL INFORMATION. The Employee covenants and agrees during Employee's employment or any time after the termination of such employment, not to communicate or divulge to any person, firm, corporation or business entity, either directly or indirectly, and to hold in strict confidence for the benefit of the Company, all Confidential Information except that Employee may disclose such Confidential Information to persons, firms or corporations who need to know such Information during the course and within the scope of Employee's employment. Employee will not use any Confidential Information for any purpose or for Employee's personal benefit other than in the course and within the scope of Employee's employment. Employee agrees to sign and abide by the terms and conditions of the Company's Confidential Information and Intellectual Property



Protection Agreement, a copy of which is attached hereto as Attachment B and incorporated as though fully set forth herein.

9.      CHOICE OF LAW, JURISDICTION AND VENUE. The parties agree that this Agreement shall be deemed to have been made and entered into in Alameda County, California and that the law of the Commonwealth of California shall govern this Agreement, without regard to conflict of laws principles. Jurisdiction and venue is exclusively limited in any proceeding by the Company or Employee to enforce their rights hereunder to any court or arbitrator geographically located in Alameda County, California. The Employee hereby waives any objections to the jurisdiction and venue of the courts in or for Alameda County, California, including any objection to personal jurisdiction, venue, and/or forum non-convenient, in any proceeding by the Company to enforce its rights hereunder filed in or for Alameda County, California.  Employee agrees not to object to any petition filed by the Company to remove an action filed by Employee from a forum or court not located in Alameda County, California.

10.     ENTIRE AGREEMENT.  This Agreement represents the entire agreement of the parties and it supersedes all prior statements, discussions and understandings and may be amended only by a writing signed by both parties.

This agreement shall come into effect upon your commencing services at iGate Technologies Incorporated. We look forward to a long and beneficial relationship.

Sincerely,

John Hagen
Senior HR Business Partner, Americas

Agreed to and Accepted with the
Intent to be Legally Bound

_____
        (Signature)

# Notice of Removal
# EXHIBIT C

MICHAEL C. HALLERUD, State Bar No. 68971
hallerud@nixonpeabody.com
BONNIE GLATZER, State Bar No. 147804
bglatzer@nixonpeabody.com
NIXON PEABODY LLP
One Embarcadero Center, 18th Floor
San Francisco, California 94111-3600
Telephone: (415) 984-8200
Facsimile: (415) 984-8300

Attorneys for Defendant
IGATE TECHNOLOGIES, INC.

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KARETHA DODD,<br><br>                              Plaintiff,<br><br>          v.<br><br>IGATE TECHNOLOGIES, INC., a Pennsylvania corporation; MUKUND SRINATH, an individual; and DOES 1 through 200,<br><br>                              Defendants. | Case No.<br><br>**DECLARATION OF MICHAEL C. HALLERUD IN SUPPORT OF NOTICE OF REMOVAL** |

MICHAEL C. HALLERUD does hereby depose and declare:

1.      I am a partner of Nixon Peabody LLP and an active member of The State Bar of California and the Bar of this Court. I am lead counsel for Defendant IGATE Technologies, Inc. in the instant action. I have personal knowledge of the facts set forth below. If called upon to testify, I would testify competently to the facts set forth in this Declaration.

2.      Attached hereto as Exhibit 1 is a true and correct copy of the on-line Attorney Status Report of the Massachusetts Board of Bar Overseers of the Supreme Judicial Court for Karetha A. Dodd, as of January 23, 2015. Exhibit 1 lists Ms. Dodd's office address as 360 S. Market Street, No. 528, San Jose, California 95113.

3.      Attached hereto as Exhibit 2 is a true and correct copy of the on-line Attorney's Registration and Public Disciplinary Record of the Supreme Court of Illinois Attorney Registration

1    and Disciplinary Commission ("ARDC") for Karetha A. Dodd, as of January 23, 2015. Exhibit 2

2    lists Ms. Dodd's office address as 360 S. Market Street, No. 528, San Jose, California 95113.

3        I declare the foregoing is true under penalty of perjury under the laws of the United States and

4    the State of California.

5        Executed at San Francisco, California, this 30th day of January 2015.

6

7

8                                    Michael C. Hallerud

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-2-

# Hallerud Declaration
# EXHIBIT 1

# Massachusetts Board of Bar Overseers
## of the Supreme Judicial Court
99 High Street
Boston, Ma. 02110
### Attorney Status Report



Karetha A. Dodd

312-343-9123
360 S. Market
#528
San Jose CA 95113

Admitted to the bar on 10/12/06
Board of Bar Overseers number: 668227
Current status is Active

Full office addresses listed for Active, IHC, and 304 status attorneys only.

This attorney has certified that he or she does not carry malpractice insurance because the attorney is solely employed either as a government lawyer or by an organizational client (such as a corporation).

This attorney has no record of public discipline.

Data as of 01/23/15

# Hallerud Declaration
# EXHIBIT 2

# *LAWYER SEARCH: ATTORNEY'S REGISTRATION AND PUBLIC DISCIPLINARY RECORD*

ARDC Individual Attorney Record of Public Registration and Public Disciplinary and Disability Information as of January 23, 2015 at 1:22:11 PM:

| | |
|---|---|
| **Full Licensed Name:** | Karetha A Dodd |
| **Full Former name(s):** | None |
| **Date of Admission as Lawyer by Illinois Supreme Court:** | November 9, 1995 |
| **Registered Business Address:** | 360 S. Market St. #528 San Jose, CA 95113-2886 |
| **Registered Business Phone:** | (312) 343-9123 |
| **Illinois Registration Status:** | Active and authorized to practice law  - Last Registered Year: 2014 |
| **Malpractice Insurance: (Current as of date of registration; consult attorney for further information)** | In annual registration, attorney reported that he/she does not have malpractice coverage. (Some attorneys, such as judges, government lawyers, and in-house corporate lawyers, may not carry coverage due to the nature of their practice setting.) |

**Public Record of Discipline and Pending Proceedings:**    None

Check carefully to be sure that you have selected the correct lawyer. At times, lawyers have similar names. The disciplinary results displayed above include information relating to any and all public discipline, court-ordered disability inactive status, reinstatement and restoration dispositions, and pending public proceedings. Investigations are confidential and information relating to the existence or status of any investigation is not available. For additional information regarding data on this website, please contact ARDC at (312) 565-2600 or, from within Illinois, at (800) 826-8625.

ARDC makes every effort to maintain the currency and accuracy of Lawyer Search. If you find any typographical errors in the Lawyer Search information, please email registration@iardc.org. For changes to contact information, including address, telephone or employer information, we require that the attorney submit a change of address form. Please consult our Address Change Requests page for details. Name changes require the filing of a motion with the Supreme Court. Please consult our Name Change Requests page for details.