MICHAEL C. HALLERUD, State Bar No. 68971
hallerud@nixonpeabody.com
BONNIE GLATZER, State Bar No. 147804
bglatzer@nixonpeabody.com
NIXON PEABODY LLP
One Embarcadero Center, 18th Floor
San Francisco, California 94111-3600
Telephone:  (415) 984-8200
Facsimile:  (415) 984-8300

Attorneys for Defendant and Counterclaimant
IGATE TECHNOLOGIES, INC.

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KARETHA DODD,<br><br>                              Plaintiff,<br><br>        v.<br><br>IGATE TECHNOLOGIES, INC., a Pennsylvania corporation; MUKUND SRINATH, an individual; and DOES 1 through 200,<br><br>                              Defendants. | Case No. 3:15-cv-00431-VC<br><br><br>**IGATE TECHNOLOGIES, INC.'S ANSWER TO FIRST AMENDED COMPLAINT AND COUNTERCLAIM** |
| IGATE TECHNOLOGIES, INC.,<br><br>                              Counterclaimant,<br><br>        v.<br><br>KARETHA DODD,<br><br>                              Counter-Defendant. | |

## ANSWER

        COMES NOW Defendant IGATE Technologies, Inc. ("IGATE") and, for its Answer to the First Amended Complaint for Damages ("FAC") by Plaintiff Karetha Dodd ("Dodd"), states, for itself only, as follows.

**Preliminary Allegations: Parties, Jurisdiction, Venue**

1. IGATE admits the allegations of paragraph 1 of the FAC.

2. IGATE denies each and every allegation of paragraph 2 of the FAC, except that IGATE admits it is licensed to do business and does conduct business in the State of California, including Alameda County; employs more than five persons in the State of California; and once maintained its United States headquarters in Alameda County until a time prior to the commencement of this action.

3. IGATE denies each and every allegation of paragraph 3 of the FAC, except that IGATE admits that Defendant Mukund Srinath ("Srinath") is an adult male citizen and resident of the Republic of India and supervised Dodd at relevant times.

4. IGATE admits the allegations of paragraph 4 of the FAC.

5. IGATE denies each and every allegation of paragraph 5 of the FAC.

6. IGATE denies each and every allegation of paragraph 6 of the FAC, except that IGATE admits that it entered into an employment letter agreement with Dodd, dated March 15, 2012, which provided in paragraph 9 thereof, "Jurisdiction and venue is exclusively limited in any proceeding by the Company or Employee to enforce their rights hereunder to any court or arbitrator geographically located in Alameda County, California."

**Factual Allegations**

7. IGATE denies each and every allegation of paragraph 7 of the FAC, except that IGATE admits that Dodd is an active member of the Bars of the States of Illinois and Massachusetts; admits Dodd was employed by Patni Americas, Inc. in Cambridge, Massachusetts from on or about October 2008; admits that Patni Americas, Inc. was a subsidiary of Patni Computer Systems Limited; and is without knowledge or information sufficient to form a belief as to the truth of Dodd's allegations of her duties as an employee of Patni Americas, Inc. prior to May 2011.

8. IGATE denies each and every allegation of paragraph 8 of the FAC, except that IGATE admits that IGATE employed Dodd from on and after April 1, 2012, and that Srinath supervised Dodd thereafter.

9. IGATE denies each and every allegation of paragraph 9 of the FAC, except that

-2-

1    IGATE admits that Dodd attended a prestigious law school.

2          10.    IGATE denies each and every allegation of paragraph 10 of the FAC.

3          11.    IGATE denies each and every allegation of paragraph 11 of the FAC.

4          12.    IGATE denies each and every allegation of paragraph 12 of the FAC, except that

5    IGATE admits that Srinath, Srinivas Kandula, Phaneesh Murthy, and Sujit Sircar maintained cordial

6    business relationships with each other and many other persons, including Dodd.

7          13.    IGATE is without knowledge or information sufficient to form a belief as to the truth

8    of the allegations of paragraph 13 of the FAC, except that IGATE admits that Srinath visited

9    Cambridge, Massachusetts in April 2012 on business; that Srinath and Dodd socialized at a restaurant

10   on the last full day of Srinath's business trip and ordered wine; and that Srinath and Dodd, when not

11   performing services for or acting on behalf of IGATE, visited a strip club.

12         14.    IGATE is without knowledge or information sufficient to form a belief as to the truth

13   of the allegations of paragraph 14 of the FAC, except that IGATE admits that Srinath and Dodd,

14   when not performing services for or acting on behalf of IGATE, socialized together in a public space

15   at Srinath's hotel on the last full day of Srinath's business trip to Cambridge, Massachusetts in April

16   2012.

17         15.    IGATE is without knowledge or information sufficient to form a belief as to the truth

18   of the allegations of paragraph 15 of the FAC.

19         16.    IGATE is without knowledge or information sufficient to form a belief as to the truth

20   of the allegations of paragraph 16 of the FAC, except that IGATE admits its policies prohibit sexual

21   harassment and denies that the alleged actions occurred while Srinath and Dodd were performing

22   services for or acting on behalf of IGATE.

23         17.    IGATE is without knowledge or information sufficient to form a belief as to the truth

24   of the allegations of paragraph 17 of the FAC, except that IGATE admits that Srinath is employed in

25   the Republic of India, admits that IGATE's policies permitted and encouraged employees to report

26   alleged sexual harassment, denies that Dodd was deterred or impeded from reporting alleged sexual

27   harassment, and denies that persons to whom Dodd could report alleged sexual harassment would or

28   did subordinate their obligations under IGATE policies and the law to personal relationships.

18.     IGATE is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 18 of the FAC, except that IGATE admits that Murthy had a consensual intimate relationship with Araceli Roiz and admits that Dodd had a personal social relationship with non-IGATE employee Tiger Ramesh.

19.     IGATE is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 19 of the FAC.

20.     IGATE is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 20 of the FAC, except that IGATE admits that Dodd corresponded with Ramesh in furtherance of a personal social relationship.

21.     IGATE denies each and every allegation of paragraph 21 of the FAC, except that IGATE is without knowledge or information sufficient to form a belief as to the truth of Dodd's allegation that she felt revolted.

22.     IGATE denies each and every allegation of paragraph 22 of the FAC, except that IGATE admits that Srinath supervised Dodd from India and that Dodd travelled from California to India on business from on or about September 16 through on or about September 26, 2012.

23.     IGATE is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 23 of the FAC, except that IGATE admits that Srinath and Dodd dined at an apartment while they were on a business trip in India and that household staff of the apartment were present with Srinath and Dodd.

24.     IGATE is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 24 of the FAC.

25.     IGATE is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 25 of the FAC.

26.     IGATE is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 26 of the FAC.

27.     IGATE is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 27 of the FAC.

28.     IGATE is without knowledge or information sufficient to form a belief as to the truth

of the allegations of paragraph 28 of the FAC.

29.     IGATE denies each and every allegation of paragraph 29 of the FAC, except (1) IGATE admits that Dodd was the chair of IGATE's harassment committee and personally directed some or all of its investigations during her IGATE employment; and (2) IGATE admits Dodd knew she had the right and opportunity as an employee, and the fiduciary duty as a corporate officer, to report any perceived violation of IGATE's harassment policy.

30.     IGATE admits the allegations of paragraph 30 of the FAC.

31.     IGATE denies each and every allegation of paragraph 31 of the FAC, except (1) IGATE admits that Dodd had organizational responsibility, independent of her position as Head of Legal (Americas), to develop customer contracting policies and procedures and to ensure conformity of customer contracts in the Americas to IGATE contracts policies; and (2) IGATE admits the head of contracts for regions outside the Americas resigned in 2013.

32.     IGATE is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 32 of the FAC, except that (1) IGATE admits that Srinath made a business trip in April 2013 that included Fremont, California in the itinerary, (2) denies that any position of Global Head of Contracts has ever existed in IGATE, and (3) denies that Dodd applied or was selected by IGATE or its affiliates for a position of Global Head of Contracts.

33.     IGATE is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 33 of the FAC, except that IGATE denies that any position of Global Head of Contracts has ever existed in IGATE and denies that Dodd applied for or was selected by IGATE or its affiliates for a position of Global Head of Contracts.

34.     IGATE denies each and every allegation of paragraph 34 of the FAC, except that IGATE is without knowledge or information sufficient to form a belief as to the truth of the allegation that Srinath and Dodd never met again in person.

35.     IGATE denies each and every allegation of paragraph 35 of the FAC, except that IGATE admits that Roiz threatened litigation, Murthy was terminated from his position, Murthy's termination affected his compensation expectations adversely, and Murthy became legally adverse to IGATE Corporation.

IGATE TECHNOLOGIES, INC.'S FAC ANSWER AND COUNTERCLAIM

36.    IGATE denies each and every allegation of paragraph 36 of the FAC, except that IGATE admits an investigation of Murthy was undertaken, that Thomas Wilson participated in that investigation, and that Dodd was a percipient witness in that investigation.

37.    IGATE is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 37 of the FAC, except that IGATE admits that Dodd was a percipient witness in the investigation of Murthy, that Dodd was interviewed by Wilson during the investigation of the "Murthy matter," and that Dodd had a legal and moral obligation to cooperate in and assist the investigation as requested.

38.    IGATE denies each and every allegation of paragraph 38 of the FAC, except that IGATE admits that Dodd was interviewed as a percipient witness by Wilson in the course of an investigation of Murthy.

39.    IGATE denies each and every allegation of paragraph 39 of the FAC, except that IGATE admits that Dodd was interviewed as a percipient witness by Wilson in the course of an investigation of Murthy and that Dodd disclosed to Wilson information about her interactions with Srinath.

40.    IGATE denies each and every allegation of paragraph 40 of the FAC, except that IGATE admits that its Policy on Sexual Harassment and Consensual Sexual or Romantic Relationships provides procedures for the investigation and resolution of complaints presented under the policy.

41.    IGATE denies each and every allegation of paragraph 41 of the FAC.

42.    IGATE denies each and every allegation of paragraph 42 of the FAC.

43.    IGATE denies each and every allegation of paragraph 43 of the FAC.

44.    IGATE denies each and every allegation of paragraph 44 of the FAC, except that IGATE admits that Dodd reported to Thomas Wilson interactions between her and Srinath.

45.    IGATE denies each and every allegation of paragraph 45 of the FAC, except that IGATE admits that Dodd voluntarily resigned her IGATE employment.

46.    IGATE denies each and every allegation of paragraph 46 of the FAC.

47.    IGATE denies each and every allegation of paragraph 47 of the FAC, except that

1  IGATE admits that personnel action with respect to Srinath was taken by IGATE Corporation in
2  response to Dodd's disclosures to Wilson.

3          48.     IGATE denies each and every allegation of paragraph 48 of the FAC.

4          49.     IGATE denies each and every allegation of paragraph 49 of the FAC.

5          50.     IGATE denies each and every allegation of paragraph 50 of the FAC.

6          51.     IGATE denies each and every allegation of paragraph 51 of the FAC.

7          52.     IGATE denies each and every allegation of paragraph 52 of the FAC.

8          53.     IGATE denies each and every allegation of paragraph 53 of the FAC.

9          54.     IGATE denies each and every allegation of paragraph 54 of the FAC.

10         55.     IGATE denies each and every allegation of paragraph 55 of the FAC.

11                                  **First Cause of Action**

12         56.     IGATE incorporates herein by reference its responses to paragraphs 1-55 of the FAC.

13         57.     IGATE denies each and every allegation of paragraph 57 of the FAC.

14         58.     IGATE denies each and every allegation of paragraph 58 of the FAC.

15         59.     IGATE denies each and every allegation of paragraph 59 of the FAC.

16         60.     IGATE denies each and every allegation of paragraph 60 of the FAC, except that

17  IGATE admits that Dodd has exhausted all administrative remedies required by law as to IGATE.

18         61.     IGATE denies each and every allegation of paragraph 61 of the FAC.

19                                 **Second Cause of Action**

20         62.     IGATE incorporates herein by reference its responses to paragraphs 1-61 of the FAC.

21         63.     To the extent the allegations of the Second Cause of Action are pled against IGATE,
22  IGATE denies each and every allegation of paragraph 63 of the FAC.

23         64.     To the extent the allegations of the Second Cause of Action are pled against IGATE,
24  IGATE denies each and every allegation of paragraph 64 of the FAC.

25         65.     To the extent the allegations of the Second Cause of Action are pled against IGATE,
26  IGATE denies each and every allegation of paragraph 65 of the FAC.

27         66.     To the extent the allegations of the Second Cause of Action are pled against IGATE,
28  IGATE denies each and every allegation of paragraph 66 of the FAC.

**Third Cause of Action**

67.     IGATE incorporates herein by reference its responses to paragraphs 1-66 of the FAC.

68.     To the extent the allegations of the Third Cause of Action are pled against IGATE, IGATE denies each and every allegation of paragraph 68 of the FAC.

69.     To the extent the allegations of the Third Cause of Action are pled against IGATE, IGATE denies each and every allegation of paragraph 69 of the FAC.

70.     To the extent the allegations of the Third Cause of Action are pled against IGATE, IGATE denies each and every allegation of paragraph 70 of the FAC.

71.     To the extent the allegations of the Third Cause of Action are pled against IGATE, IGATE denies each and every allegation of paragraph 71 of the FAC.

**Fourth Cause of Action**

72.     IGATE incorporates herein by reference its responses to paragraphs 1-71 of the FAC.

73.     To the extent the allegations of the Fourth Cause of Action are pled against IGATE, IGATE denies each and every allegation of paragraph 73 of the FAC.

74.     To the extent the allegations of the Fourth Cause of Action are pled against IGATE, IGATE denies each and every allegation of paragraph 74 of the FAC.

75.     To the extent the allegations of the Fourth Cause of Action are pled against IGATE, IGATE denies each and every allegation of paragraph 75 of the FAC.

76.     To the extent the allegations of the Fourth Cause of Action are pled against IGATE, IGATE denies each and every allegation of paragraph 76 of the FAC.

**Fifth Cause of Action**

77.     IGATE incorporates herein by reference its responses to paragraphs 1-76 of the FAC.

78.     IGATE denies each and every allegation of paragraph 78 of the FAC.

79.     IGATE denies each and every allegation of paragraph 79 of the FAC.

80.     IGATE denies each and every allegation of paragraph 80 of the FAC.

**Sixth Cause of Action**

81.     IGATE incorporates herein by reference its responses to paragraphs 1-80 of the FAC.

82.     IGATE denies each and every allegation of paragraph 82 of the FAC.

83.     IGATE denies each and every allegation of paragraph 83 of the FAC.

**First Affirmative Defense**

The FAC fails to state a claim upon which relief may be granted.

**Second Affirmative Defense**

The Sixth Cause of Action of the FAC is barred by Division 4 of the California Labor Code, including particularly Sections 3600 and 3602.

**Third Affirmative Defense**

The Second, Third, Fourth, Fifth, and Sixth Causes of Action of the FAC are barred, in whole or in part, by the applicable statutes of limitations, including, but not limited to, Section 335.1 of the California Code of Civil Procedure.

**Fourth Affirmative Defense**

The First Cause of Action of the FAC is barred, and damages thereunder are precluded, in whole or in part, by and to the extent of Plaintiff's failure timely to report the alleged sexual harassment as required by law and IGATE policy.

**Fifth Affirmative Defense**

Plaintiff's prayer for damages is precluded by and to the extent of her failure to mitigate her losses.

**Sixth Affirmative Defense**

The FAC is barred, and damages thereunder are precluded, in whole or in part, by the doctrine of after-acquired evidence, specifically Plaintiff's concealment of her unauthorized practice of law in the State of California.

**Seventh Affirmative Defense**

The FAC is barred, and damages thereunder are precluded, in whole or in part, by the doctrine of unclean hands, specifically, Plaintiff's unauthorized practice of law in the State of California.

WHEREFORE, Defendant IGATE Technologies, Inc., having fully answered, respectfully requests that the Court enter final judgment in IGATE's favor, dismissing Plaintiff Karetha Dodd's action with prejudice and ordering that Dodd take nothing thereby, awarding IGATE its attorneys' fees and costs of defense, and ordering such other and further relief as may be warranted.

# COUNTERCLAIM

COMES NOW Counterclaimant IGATE Technologies, Inc. ("IGATE") and, for its Counterclaim against Counter-defendant Karetha Dodd ("Dodd") under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, states as follows:

## Jurisdiction and Venue

1.      This Court has jurisdiction of IGATE's Counterclaim pursuant to 18 U.S.C. § 1030(g) and 28 U.S.C. § 1331.

2.      Venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1391(b)(1)-(2) and Rule 13 of the Federal Rules of Civil Procedure.

## Parties

3.      IGATE is a corporation organized under the laws of the State of Pennsylvania; IGATE maintains its principal place of business in the Township of Bridgewater in the State of New Jersey. IGATE provides integrated technology and operations-based solutions to business customers nationally and internationally, including closed and open source technologies, enterprise technologies, validation and quality assurance services, application development and maintenance, business intelligence and data warehousing, and knowledge process and back office services. IGATE's business is in and affects interstate and foreign commerce.

4.      Dodd is a citizen of Santa Clara County, California and IGATE's former Vice President and Head of Legal (Americas).  As an IGATE employee, Dodd last worked in IGATE's Fremont, Alameda County, California offices.  Dodd is an active member of the Bars of the States of Illinois and Massachusetts, but is not a member of The State Bar of California.

## Statement of Facts

5.      IGATE and its affiliates maintain voice and data communications networks and data storage facilities for the conduct of business in interstate and foreign commerce.  IGATE and its affiliates also deploy owned, leased, and licensed hardware and software that comprises and accesses the networks and data storage facilities of IGATE and its affiliates.

6.      IGATE and its affiliates have devised extensive physical, electronic, contractual, and procedural security measures to safeguard their networks, data storage facilities, and their and their

customers' data, technology, intellectual property, and operations.   Among the network and data security policies and procedures are controls on access rights to these networks and the equipment comprising or connecting to its networks and data storage facilities.   These security measures are applicable to operations by IGATE and its affiliates worldwide.

7.     The security measures devised by IGATE and its affiliates include policies, binding on employees and contractors, that prohibit giving access to IGATE's and affiliates' devices, data, networks, and passwords to persons not directly subject to IGATE's and its affiliates' security obligations.   IGATE's and its affiliates' security measures also include policies that limit use of and access to IGATE's and its affiliates' equipment and networks to IGATE's and its affiliates' business, confer sole ownership on IGATE and its affiliates of all data created or transmitted on or through their equipment and networks, provide for unrestricted monitoring by IGATE and its affiliates of use and access, and foreclose any user privacy or ownership interests in data created or transmitted by persons using and accessing IGATE's and its affiliates' equipment and networks.

8.     Dodd agreed in her employment letter agreement with IGATE, dated March 15, 2012, to abide by all Company rules, regulations, policies, practices, and procedures and to be subject to IGATE's North American Employee Handbook.   Dodd was thereby bound by IGATE's network, equipment, and information security policies described in the preceding paragraphs.

9.     As a contractor to IGATE from on or about August 1, 2013, through January 31, 2014, Dodd was bound by all IGATE policies and procedures regarding IGATE's network, equipment, and information security policies in accordance with the terms of those policies and procedures.

10.     IGATE assigned Dodd an IGATE Dell Latitude® laptop computer for business use while Dodd was Vice President and Head of Legal (Americas).   The Dell laptop assigned to Dodd by IGATE is an electronic, high speed data processing device performing logical, arithmetic, communications, and data storage functions.   The Dell laptop assigned to Dodd by IGATE is also capable of accessing, and was used by Dodd to access, IGATE's and its affiliates' networks and data and the internet.   The Dell laptop computer assigned by IGATE to Dodd is a "computer" and a "protected computer" within the meaning of 18 U.S.C. §§ 1030(e)(1) & (2)(B).

11.     IGATE continued the assignment to Dodd of the same IGATE Dell Latitude® laptop

-11-

computer described in the preceding paragraph when Dodd ceased her employment with IGATE on or about July 31, 2013, and became a contractor to IGATE performing "Legal Department Consulting Services" on or about August 1, 2013.  Dodd's consultancy continued through January 31, 2014.  The assignment to Dodd of the Dell laptop by IGATE continued under the same terms and conditions governing the assignment of that Dell laptop to Dodd during her IGATE employment.

12.     Dodd resigned her employment by electronic mail on or about July 5, 2013, to be effective August 1, 2013.  Dodd offered in her resignation e-mail to perform as a contractor to IGATE the same duties, except the management of the "Contracts Team," that Dodd performed as Vice President and Head of Legal (Americas).  Her resignation e-mail acknowledged that if IGATE did not contract with her following her resignation, she would turn in her IGATE computer and other IGATE property on August 1, 2013.

13.     By electronic mail on July 25, 2013, Dodd inquired if IGATE had reached a decision about her staying on as a contractor ("Legal Department Consultant").  Dodd stated in this e-mail, "Otherwise, I need to turn in my company property next Tuesday . . . ."

14.     Dodd and IGATE contracted for Dodd to perform "Legal Department Consulting Services" for the period August 1 through October 31, 2013.  The contract was renewed for the period November 1, 2013, through January 31, 2014.

15.     Dodd did not return her IGATE-issued Dell Latitude® laptop computer when her consulting contract expired on January 31, 2014.

16.     On March 21, 2014, IGATE outside counsel Michael C. Hallerud corresponded by electronic mail with Dodd.  Hallerud's correspondence requested Dodd's return of the IGATE-issued laptop and all other IGATE property, including documents accessed or created by Dodd during the terms of her employment and consulting contracts.

17.     On March 22, 2014, Dodd responded by electronic mail to Hallerud's March 21 e-mail, offering to purchase the IGATE-issued Dell laptop.  Dodd also stated in her March 22, 2014, reply e-mail that if IGATE continued to insist on the return of the laptop, she would need a week to copy all files and e-mail relating to her case.  Finally, Dodd advised in her March 22 e-mail that she was represented by counsel regarding the return of IGATE property, although she did not identify her

counsel with respect to the return of IGATE property issues.

18.     On March 24, 2014, Hallerud again corresponded with Dodd and Dodd's attorney for her disputes with IGATE, Randall Aiman-Smith ("Aiman-Smith"), confirming that IGATE was insisting upon a return of all of its property, including its documents.  Aiman-Smith replied to Hallerud, with a copy to Dodd, that he (Aiman-Smith) would contact Hallerud "shortly to resolve the return of property issue."

19.     On April 1, 2014, Hallerud e-mailed Aiman-Smith, noting the passage of 8 days since Aiman-Smith had committed to contact Hallerud "shortly to resolve the return of property issue." Hallerud requested a report on the status of the property return.

20.     On April 9, 2014, Hallerud again e-mailed Aiman-Smith, noting that Aiman-Smith had still not responded regarding the return of IGATE property in Dodd's possession, and inquiring when IGATE's property would be returned.  Hallerud and Aiman-Smith spoke that same day on the telephone, during which telephone call Hallerud reiterated IGATE's insistence on the return of its property.

21.     At 9:53 a.m. on April 17, 2014, while the IGATE-issued Dell Latitude® laptop was still in the possession of Dodd and/or her attorney Aiman-Smith, Dodd and/or Aiman-Smith, or persons acting in aid of or in concert with Dodd and/or Aiman-Smith, installed on that laptop computer a computer program known as "CCleaner."  "CCleaner" is a so-called "anti-forensic" program, which its publisher promotes as erasing traces of online activities, such as internet activity history, and cleaning the computer's registry.  When installed and run, CCleaner destroys computer artifacts that disclose user actions such as what files were created, opened, edited, uploaded to removable storage devices, or e-mailed.  CCleaner also destroys—"wipes"—the contents of files, and replaces file names and extensions with "ZZZZZZZ . . . ."

22.     On April 21, 2014, Hallerud again e-mailed Aiman-Smith, stating that Aiman-Smith had not communicated with Hallerud regarding IGATE's insistence on Dodd's return of IGATE's property since they spoke by telephone on April 9, 2014.  Hallerud in his April 21 e-mail again requested the return of IGATE's "laptop and its complete programs and files."

23.     At 9:17 am on April 28, 2014, Aiman-Smith e-mailed Hallerud, "I have the laptop in

IGATE TECHNOLOGIES, INC.'S FAC ANSWER AND COUNTERCLAIM

my office and will trans-ship it tomorrow or the next day." At approximately 2:00 p.m. on April 28, 2014, CCleaner was run by Dodd, Aiman-Smith, and/or persons acting in aid of or in concert with Dodd and/or Aiman-Smith on IGATE's Dell Latitude® laptop. CCleaner was then uninstalled.

24.    As a result of the installation and operation of CCleaner by Dodd, Aiman-Smith, and/or persons acting in aid of or in concert with Dodd and/or Aiman-Smith, approximately 56,000 files, all owned by IGATE, and all records of copying, uploading, and transmission of files, and all records of internet activity, were "wiped" from IGATE's laptop while in the possession of Dodd and/or her attorney Aiman-Smith. This "wiping" of IGATE's Dell Latitude® laptop resulted in "damage" to the laptop and its data, programs, systems, and information within the meaning of 18 U.S.C. § 1030(e)(8).

25.    On May 1, 2014, the IGATE laptop issued to Dodd was delivered by United Parcel Service to Hallerud. The shipper of the laptop was Aiman-Smith.

26.    Dodd was authorized by IGATE, during the terms of Dodd's IGATE employment and consulting contract, to access IGATE's Dell Latitude® laptop assigned to Dodd for IGATE business purposes. IGATE's authorization to Dodd to access IGATE's Dell Latitude® laptop expired at the close of business on January 31, 2014.

27.    Dodd was authorized by IGATE, during the terms of Dodd's IGATE employment and consulting contract, to access the equipment, networks, and data of IGATE and its affiliates for IGATE business purposes. Dodd's business need and authorization to use or access the equipment, networks, and data of IGATE and its affiliates expired at the close of business on January 31, 2014.

28.    Aiman-Smith was never authorized by IGATE to access the IGATE Dell Latitude® laptop assigned to Dodd. Aiman-Smith was never authorized by IGATE to access the equipment, networks, and data of IGATE and its affiliates.

29.    Dodd was not authorized during the period ending January 31, 2014, to authorize Aiman-Smith to access the equipment (including the IGATE Dell Latitude® laptop assigned to Dodd), networks, and data of IGATE and its affiliates.

30.    Dodd was not authorized during the period beginning on and continuing after February 1, 2014, to authorize Aiman-Smith to access IGATE's equipment (including the IGATE

-14-

Dell Latitude® laptop assigned to Dodd) and the networks and data of IGATE and its affiliates.

31. IGATE's costs for assessing the damage to its Dell Latitude® laptop and its data, programs, systems, and information; IGATE's costs for responding to the unauthorized access to its laptop by Dodd and/or her attorney Aiman-Smith; and IGATE's costs of restoring the data, programs, systems, and information wiped from IGATE's laptop together constitute a "loss" within the meaning of 18 U.S.C. § 1030(e)(11). IGATE's "loss" resulting from the conduct of Dodd and/or Aiman-Smith as pled above exceeds $5,000 in value.

## Counterclaim

32. IGATE incorporates herein by reference paragraphs 1-31 of its Counterclaims.

33. Dodd, personally and/or through persons acting in aid of or in concert with Dodd, including Aiman-Smith, caused "damage" to IGATE's data, programs, systems, and information and a "loss" to IGATE, within the meaning of 18 U.S.C. §§ 1030(e)(8) & (11), in violation of the Computer Fraud and Abuse Act.

34. Dodd, personally and/or through persons acting in aid of or in concert with Dodd, including Aiman-Smith, intentionally accessed IGATE's Dell Latitude® laptop without authorization or exceeding Dodd's authorized access and knowingly transmitted one or more programs, codes, or commands resulting, intentionally or recklessly, in "damage" and "loss" to IGATE in violation of 18 U.S.C. § 1030(a)(5).

35. Dodd is liable to IGATE for the damages and loss caused by her conduct and/or the conduct of persons acting in aid of or in concert with Dodd, including Aiman-Smith, pursuant to 18 U.S.C. § 1030(g).

## Prayer for Relief

Counterclaimant IGATE prays as follows:

a. For damages allowable pursuant to 18 U.S.C. § 1030(g) for violation of the Computer Fraud and Abuse Act;

b. For punitive and exemplary damages;

c. For attorneys' fees and costs of suit as permitted by law; and

d.     For such other and further legal and equitable relief the Court deems just and proper.

DATED: February 6, 2015                              NIXON PEABODY LLP


                                                     By: /s/  Michael C. Hallerud
                                                         Michael C. Hallerud
                                                         Bonnie Glatzer
                                                         Attorneys for Defendant
                                                         IGATE TECHNOLOGIES, INC.

4849-6913-0529.3

IGATE TECHNOLOGIES, INC.'S FAC ANSWER AND COUNTERCLAIM